# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## LIPSCOMB v. BLANZ.

Opinion delivered February 25, 1924.

1. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—REMOVAL OF NAME FROM PETITION.—In a suit to enjoin street improvement proceedings on the ground that an insufficient number of property owners petitioned for the improvement, the chancellor's finding that a certain property owner requested removal of her name from the petition *held* not against the preponderance of the evidence.

2. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—SIGNATURE TO PETITION.—A property owner in a proposed improvement district may direct another to sign her name to the petition for such improvement.

3. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—AUTHORITY TO SIGN PETITION.—An instrument reciting: "I hereby assign my interest in my father's estate to my mother to do as she pleases during her lifetime," *held* insufficient to authorize her to fix a lien, which might extend beyond her lifetime, by signing her son's name to a petition for a street improvement, which had not been suggested when the instrument was executed.

4. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—RATIFICATION OF UNAUTHORIZED SIGNATURE.—Ratification of an unauthorized signature of a property-owner's name to a street improvement petition after passage of the improvement ordinance did not cure the lack of original authority.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

*J. C. Marshall*, for appellant.

Mrs. Long was entitled to have her name removed from the petition, the same still being in circulation, and not having been yet presented to the council. 70 Ark. 175; 11 L. R. A. (N. S.) 372. The name of C. V. Edrington, signed to the petition, was without authority. 108

Ark. 141; 111 Ark. 314. Ratification after the matter
had been passed upon by the council was too late.  156
Ark. 356.

*Melbourne M. Martin,* for appellee.

SMITH, J.  Appellants are property owners in Street
Improvement District No. 350 of the city of Little Rock,
and they seek by this suit to enjoin further proceedings
looking to the construction of the proposed improvement.
There are various grounds of attack, among others that
a majority in value of the property owners did not peti-
tion for the construction of the improvement.  As we
think the appellants are correct in this contention, we do
not consider the other grounds of attack, for the one sus-
tained is fatal to the district.

The court below sustained the organization of the
district, but found that the name of Mrs. Long, an owner
of property in the district, should be stricken from the
petition, on the ground that, before it was filed, she asked
that her name be removed.  The court found that the
name of C. V. Edrington should be counted in determin-
ing whether a majority in value had signed, and, if this
name is counted, the petition contained the necessary
majority.

On behalf of the district it is insisted that the court
erred in striking the name of Mrs. Long from the peti-
tion, and it appears that, if either name is counted, the
petition contained the necessary majority, whereas if
both names are stricken from the petition the necessary
majority was not obtained.  It becomes necessary there-
fore to determine whether either name should be included.

Mrs. Long testified that she had signed both the first
and second petitions under a misapprehension or mis-
representation, as she states, in regard to the cost of the
improvement, and that she signed the second petition
either on a Thursday or a Friday night, and that she
discovered her mistake the following morning, which was
either Friday or Saturday, and that she went the next
morning about ten o'clock, after discovering her mistake,
to the attorney who presented the petition to her for her

signature, and asked him to remove her name. The attorney told Mrs. Long that the petition was then in the possession of the gentleman who had accompanied him in securing signers. Mrs. Long assumed that her name had been or would be removed, and, when she found that the petition as filed contained her name, she filed a petition with the city council to remove her name, but the prayer thereof was not granted. There is some conflict in the testimony of Mrs. Long and the attorney, but he did not categorically deny that Mrs. Long requested the removal of her name, and we think the finding of the chancellor that the request was made, and before the filing of the petition, is not against the preponderance of the evidence.

In regard to Mr. Edrington the facts are as follows: His father owned, at the time of his death, three and one-half lots in the district, and the property descended to the son and a daughter, Mrs. Wilson, who was the only other child, subject to the marital rights of the widow, the mother of the son and the daughter. Edrington removed to Kansas City, Missouri, where he now resides, and left his mother to look after the property. After removing to Kansas City he executed and acknowledged, on January 13, 1923, the following paper writing: "To whom it may concern: I hereby assign my interest in my father's estate to my mother, to do as she pleases during her lifetime, as I believe her capable of handling same in proper way, as father would have done. (Signed) C. V. Edrington, 1037 Shawnee Avenue."

Under the authority of this instrument Mrs. Edrington occupied and managed the property.

Edrington's name was actually signed to the petition by his sister, Mrs. Wilson, but this was done under the following circumstances: The petition was presented to Mrs. Wilson in her mother's presence for her own signature, and she signed her own name. It was then presented to Mrs. Edrington for the signature of her son. Mrs. Edrington did not sign her son's name, but directed

Mrs. Wilson to do so, and this Mrs. Wilson did in the presence of her mother.

Mrs. Wilson had the right, of course, to sign her own name, as she owned property in the district, and we think the direction from Mrs. Edrington to her to sign Mr. Edrington's name was not such a delegation of authority as rendered the signature void on that account.

The Constitution of the State requires that the consent of a majority in value of the property owners must be first obtained to organize improvement districts in cities and towns, under such regulations as may be prescribed by law; and the statute has prescribed that such districts shall be organized if, within three months after the filing of the preliminary petition, the requisite number of property owners "adjoining the locality to be affected shall present to the council a petition praying that such improvement be made."

There was no delegation here of her agency by Mrs. Edrington in directing her daughter to sign her son's name. The act of the daughter was in fact the act of the mother.

At § 208 of Mechem on Agency (2d ed.) vol. 1, page 152, it is said: "Thus where a person about to perform a certain act, himself determines upon all of the elements of it which essentially belong to it, he may avail himself of any mechanical or ministerial agency which may be convenient in giving physical form or manifestation to the act. Human instrumentalities may be employed for this purpose, as well as inanimate ones. If I wish to sign my name to a document, I may use a pen, typewriter, rubber stamp, or the hand of a third person, indifferently. Inasmuch as, in such a case, I furnish the consciousness, the volition — the will — and cause the act to be done under my immediate direction and control, it is my act, whether I employ an inanimate tool to make the visible mark, or an animate one. Such a tool so used is not an agent, and the rules governing the appointment of agents do not apply to its use."

But a more important question is whether Mrs. Edrington herself had this right. The court below appeared to have proceeded upon the assumption that, if Mr. Edrington had not originally authorized his mother to sign the petition, he had subsequently ratified her act in doing so. This appears from the remark of the chancellor when the authority of Mrs. Edrington was questioned. The remark of the court was that the signature might have been ratified, although it was not originally authorized. Thereafter, before the trial was concluded, a telegram from Mr. Edrington was offered in evidence in which he stated that he ratified the act of his mother in signing his name. The attorney for the district admitted that he had sent Mr. Edrington a telegram requesting a telegram, which he worded, be sent, and the one received came in response to his own telegram.

Parol testimony was offered tending to show that the power of attorney set out above was intended to confer such control over the property as was essential for Mrs. Edrington to possess to authorize her to sign her son's name. But if this testimony was competent for that purpose—which we do not decide—it was insufficient to accomplish that result. It will be observed that Mrs. Edrington did not sign as the owner of any interest conveyed by the instrument itself. What she did was done as the agent of her son, and the oral testimony was to the effect that Mrs. Edrington lived on the property, and it was found necessary to make certain improvements on it, and the consent of Mr. Edrington was thought necessary to have this done. We gather from the testimony that these were mere improvements affecting the use or rental of the property. The purpose of the instrument evidently was to authorize Mrs. Edrington to make the improvements necessary to rent or occupy the property. The writing contains no authority to sell or incumber the title to the property by fixing a lien which might extend far beyond the life of Mrs. Edrington, and the interest or control released to Mrs. Edrington was expressly limited to her own lifetime. The oral testimony shows that the

construction of the proposed improvement was not an improvement contemplated by the parties at the time of the execution of this instrument, as the promotion of the proposed improvement had not then been suggested and was not undertaken for several months thereafter.

This second petition, the one under consideration, was filed on the 12th day of May, 1923, and the city council soon thereafter granted the prayer thereof, while the telegrams were not sent and received for some time thereafter—not, indeed, until the trial of this suit was being heard in the chancery court, which was on October 29, 1923. This alleged ratification might have been made, and would have been sufficient if made before the passage of the ordinance, but, as the ratification did not occur until after the passage of the ordinance, this subsequent ratification did not cure the lack of original authority on the part of Mrs. Edrington.

In the case of *Lewis* v. *Forrest City Special Improvement Dist.,* 156 Ark. 356, we held that a corporation might, by a course of conduct in permitting its executive officers to manage its affairs, confer implied authority to sign a petition for the organization of an improvement district, but that such implied authority must exist before the petition was signed, and that, if the power did not so exist, the board of directors could not, after the enactment of the ordinance pursuant to the petition, validate the signature by ratification, for the reason that there must be a majority in value of the property represented by authorized signatures before the council can pass the ordinance.

The attempted ratification by the telegram was therefore unavailing, because it was sent long after the council had passed the ordinance, and, as the power of attorney itself did not confer the authority on Mrs. Edrington to sign her son's name, it follows that his name was signed without authority, and, this being true, and it also being conceded that this suit was brought in apt time to raise these questions, it follows that the council had no authority to pass the ordinance creating the district, and the

commissioners should therefore be enjoined from attempting to proceed under it.

It is therefore ordered that the decree of the court below be reversed, and the cause remanded with directions to enter a decree canceling the ordinance of the city creating said district, and the commissioners of the district will be enjoined from further proceedings thereunder.