DEBAUCHE, Appellant, vs. CITY OF GREEN BAY and others, Respondents.

*December 10, 1937—March 15, 1938.*

For the appellant there were briefs by *Alk, Kresky & Cohen* of Green Bay, and oral argument by *Meyer Cohen* and *Michael F. Kresky*.

*Thomas C. Dwyer* of Green Bay, for the respondents.

The following opinion was filed January 11, 1938:

FAIRCHILD, J. The thirteen challenged names on the petition are to be rejected if sec. 370.01 (19), Stats., providing,—

"in all cases where the written signature of any person is required by law, it shall always be the proper handwriting of

such person or in case he is unable to write, his proper mark or his name written by some person at his request and in his presence,"—

applies to the signatures required by sec. 62.07, Stats., requiring an annexation petition to be "signed by a majority of the electors." The only question submitted to us is, as stated by defendants:

"Whether in this case a husband signing for his wife or a wife signing for her husband, in the presence of the other party and with their knowledge and consent is a sufficient signing."

In interpreting sec. 62.07, Stats., consideration must be given to a method devised by the legislature for the particular purpose of getting an expression of judgment from electors residing in a particular community. The peculiar relation between the official characters of the parties to the process is of greater consequence by reason of the governmental nature of the acts involved.

An elector who desires the annexation to an adjacent city of the district in which he resides must express his decision to join in the petition for such annexation by subscribing his own name if he can write. Among the cases called to our attention by defendants is the case of *State ex rel. Patton v. Myers,* 127 Ohio St. 95, 186 N. E. 872. That case deals with a petition. Art. II, § 1g, of the constitution of that state provided:

". . . Each signer . . . must be an elector of the state and shall place on such petition after his name the date of signing and his place of residence. . . . The names of all signers to such petitions shall be written in ink, each signer for himself."

The interpretation was that the signature must be that of the elector, although the date and residence might be filled

in by someone else "at the direction and with the authority of the elector signing the petition." The requirement there of a proper individual signature may appear more emphatically to have been set out than in our statute because of the use of the words "each signer for himself." We cannot agree with the implication of the *Patton Case* that it was necessary to have those words in the law in order to require a proper personal signature because the authorization to act in this particular is by the government to a being that can have ability to act only by reason of the peculiar relation between the government and citizen. The term "elector" is descriptive of a citizen having certain constitutional and statutory qualifications. Acts in this matter are by permission of the legislature, and sec. 62.07, Stats., does not authorize the delegation to a deputy of responsibility as an elector. It certainly was expected that electors who could write would sign their individual names, not that some would and that others would authorize an agent to write them, and still others permit their names to be signed by solicitors. If the statute be construed to permit some to sign by agent, it would permit all to do so. We are referred to cases where wills, mortgages, and other writings, peculiarly private or commercial in character, have been held valid although the signature upon the instrument was placed there by authorization and not in the handwriting of the principal. *Will of Mueller,* 188 Wis. 183, 205 N. W. 814. They serve to point out a distinction which must be recognized between cases where the common-law rule governing the affixing of signatures applies, and those situations falling in the class that have been taken out from under that rule by statutes, between the cases where authorization is consistent with the purpose sought to be effected and those cases in which delegation of authority would be likely to defeat the purpose for

which the statute was enacted. Clearly one may nominate another to act for him under some circumstances, as in the exercise of a private right, while under other circumstances the impropriety of permitting him as an elector to delegate his participation in governmental matters to another would be as plain. *Cochell v. Reynolds,* 156 Ind. 14, 58 N. E. 1029.

In *Mericle v. Mulks,* 1 Wis. *366, where the statute required supervisors "to sign" a road warrant, it was held that the construction statute, now sec. 370.01 (19), applied. *Williams v. Mitchell,* 49 Wis. 284, 5 N. W. 798, contains *dictum* in support of *Mericle v. Mulks,* but came to an opposite result on the basis that a statute requiring supervisors to "make out" a notice did not require a written signature. In *Scott v. Seaver,* 52 Wis. 175, 8 N. W. 811, this court refused to apply the rule of *Mericle v. Mulks* to a case where a statute required an indorsement of an assignment for the benefit of creditors by the assignee and an officer. *Meachen v. More,* 54 Wis. 214, 11 N. W. 534, dealt with a statute requiring a summons to be "subscribed" by an attorney; it was there held that a written signature was not required. It may, however, be said that *Mericle v. Mulks* still stands as authority for the proposition that where the legislature requires the signature of one who acts in a governmental capacity, a written signature is required, and the construction statute applies. *In re Opinion of the Justices,* 114 Me. 557, 95 Atl. 869, 876.

The trial court ruled that inasmuch as each name in each instance was signed by direction and in the presence of the elector, the thirteen names could properly be counted. The defendants, to sustain the judgment granted below, rely on the rule that what is done for a man in his presence and by his express direction is his act and deed. The rule mentioned arises out of a common-law distinction between acting by an

agent when the agent acts elsewhere than in the presence of the principal and acting by an agent who acts in the presence and at the express direction of the principal, and who is sometimes said not to be an agent at all, but a mere instrumentality, albeit human rather than mechanical. 1 Mechem, Agency (2d ed.), p. 152, cited in *Lipscomb v. Blanz,* 163 Ark. 1, 258 S. W. 624. Signing under the latter circumstances has been asserted to be sufficient in cases where a signing in the former situation would be insufficient. *Commonwealth v. Connelly,* 163 Mass. 539, 40 N. E. 862; *Lipscomb v. Blanz, supra;* 1 Restatement, Agency, § 28, Comment *e.* In *Mariner v. Wiens,* 137 Wis. 637, 119 N. W. 340, where a son executed a sealed instrument for his father in the latter's presence and at his immediate parol direction, it was held that the execution of the instrument was the act of the father, and it therefore had the dignity of a sealed obligation and not one merely by parol. In the case before us, however, sec. 370.01 (19), Stats., controls. A written signature is required under sec. 62.07, and the construction statute limits the efficacy of a signing by a human instrumentality to cases where the signer is unable to write. There is thus no room for application of the rule permitting a signing in any other way than by the elector's proper handwriting if he is able to write.

The result reached by reading these statutes together is consistent with public policy in the type of matter affected. Under the annexation statute here considered, a declaration of intention by signing the petition is analogous to voting upon the question. The elector is to express his opinion. The method of expression is provided. The petition derives its force from the active insistence of the elector who signs it. If he cannot write, he may have assistance just as the disabled may have assistance in voting, but the possibility of outside interference is here, as in the case of voting, to be

reduced to a minimum in every instance. So far as it is possible to provide for it, it is to be the elector's individual act. The consideration and energy called for are the elector's, and they are to be used by him in discharging his duty in shaping and influencing this particular affair of government. This is not to be lightly put aside or exercised without thought and must pertain to and be the individual act of the elector. Further, when a petition is signed by each elector, in writing, it has what may properly be styled a face value when presented. The question of genuineness of signature is the only one that can be raised, and the determination as to that is, of course, aided by a presumption. The further question of proper authorization of a signature not the elector's cannot arise except in cases where the elector is unable to write. When the proper significance of the words of the statute and the purpose sought to be accomplished through it are recognized, there is no occasion to question that the meaning of the words, "signed by a majority of the electors," requires signatures of the electors in—

"the proper handwriting of such person or in case he is unable to write, his proper mark or his name written by some person at his request and in his presence."

Having reached the conclusion that the instruments presented as petitions were insufficient, by reason of the fact that the thirteen names challenged were not signed by the electors, they being able to write, it is unnecessary to consider other questions raised by plaintiff.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment restraining further proceedings based upon this petition.

A motion for a rehearing was denied, with $25 costs, on March 15, 1938.