STATE, EX REL. ELIZABETH S. POND, V. EDWARD A. CLARK
ET AL.

FILED FEBRUARY 8, 1906. No. 14,153.

1. **Villages: TERRITORIAL LIMITS.** The law authorizing the incorporation of villages does not contemplate including in the corporate limits remote territory, or purely agricultural lands, not actually connected with the village, and not adapted to municipal purposes. *State v. Mote*, 48 Neb. 683.

2. ———: **INCORPORATION.** Such lands cannot be included within the limits of the proposed village for the sole purpose of obtaining a sufficient number of actual residents necessary to incorporate, without the consent of the owner, and such owner can maintain proceedings by *quo warranto* to determine the validity of the order of incorporation. *State v. Dimond*, 44 Neb. 154.

3. **Evidence** examined, and *held* to show less than the required number of actual residents within the village necessary to incorporate, at the time the proceedings for that purpose were had.

ERROR to the district court for Holt county: JAMES J. HARRINGTON, JUDGE. *Reversed with directions.*

*E. H. Benedict* and *A. G. Wolfenbarger,* for plaintiff in error.

*M. F. Harrington, contra.*

BARNES, J.

The relator brought this action in *quo warranto* against the respondents, as trustees of the village of Inman, in the district court for Holt county to obtain a judgment of ouster, and have the proceedings purporting to incorporate said village declared void. The trial resulted in a judgment for the respondents, and the relator brings the case here by petition in error.

The record discloses that in the year of 1881 the Pioneer Townsite Company purchased the southwest quarter of section 19, township 28, range 10 west, in said county, and laid out and platted a small part of the southeast 40

acres thereof as a townsite.   The Chicago & Northwestern railroad bisects the quarter section into two nearly equal parts, running through it from southeast to northwest, and leaving it in two triangular tracts.   The townsite company later on platted some small additions to the original town, all of which are situated on the southeast forty acres of the quarter section, and are all south of the railroad.   At the time the townsite company purchased its land and laid out its town as aforesaid, the relator owned and resided on the south half of the northwest quarter of said section, where she still resides.   It appears that she has sold seven small tracts of said land as follows: In the northeast corner five acres; in the southeast corner two tracts of one acre each; in the south central part a lot for a church, and west of that lot she sold to one Crosser and his son five acres each, and to a Mrs. Simmons three and one-half acres.   These tracts are disconnected, and the relator has never platted any part of her land, nor taken any steps to make it a part of the townsite, but, on the contrary, uses the unsold portion of it exclusively for agricultural purposes.   The platted and inhabited part of said town, at its nearest point, is about a quarter of a mile from the relator's land, and the intervening territory is unplatted, uninhabited, and is used for a pasture and other agricultural purposes.   It further appears that on or about the 19th day of April, 1902, an attempt was made to incorporate the village under the provisions of section 40, article I, chapter 14, Compiled Statutes 1901, and to that end a petition was presented to the board of commissioners of Holt county purporting to be signed by a majority of the taxable inhabitants of said town, setting forth that it contained more than 200 bona fide residents, and praying that the territory therein described by metes and bounds be incorporated under the name of the village of Inman.   The board granted the prayer of the petition, and passed a resolution purporting to incorporate the said village.

It appears that in order to obtain the required number

of *bona fide* residents the petitioners took in and embraced the vacant pasture and agricultural lands belonging to the townsite company north of the railroad track, together with the land of the relator above described, and which is, as before stated, situated a quarter of a mile from the platted and inhabited part of the town or village. It further appears that the relator was not asked to sign the petition presented to the board of commissioners, and had no notice or knowledge of the proceedings until after the order of incorporation was made, and that the respondents are acting as the board of trustees of said village.

It is contended by the relator that the act of the petitioners and the county board in including and taking in her agricultural land and incorporating it as a part of said village was unlawful and void, and that she is not bound thereby. It would seem that her contention should be sustained. This identical question was before us in *State v. Mote,* 48 Neb. 683. There it was sought to incorporate the village of Allen in Dixon county. There, as here, the inhabited part of the townsite was south of the railroad track. There, as here, in order to obtain the requisite number of actual residents to authorize incorporation, the metes and bounds of the proposed village were extended north of the railroad so as to include the lands of the relator and one Pomeroy. In that case, as in this, there was a tract of purely agricultural land lying between the inhabited part of the town, or proposed village, and the lands of the relator sought to be included within the corporation. There the relator's land was situated about 40 rods from the platted and inhabited part of the townsite, while here the relator's land is situated a quarter of a mile from the village proper. In that case it was said:

"It appears from the evidence that one reason which moved the parties who were active in forwarding the incorporation to include the relator's property was that he was living thereon with his family, including the relator,

nine persons, and they needed them within the limits to make up the necessary 200 actual residents required by statute. It was shown that portions of farms not connected with the village proper and not platted or appropriated or adapted to municipal purposes were included within the corporate limits by the order of incorporation, and of such was the portion of the farm of relator, hence it was illegally included. *State v. Dimond*, 44 Neb. 154, and cases cited.. The village organized had no legal existence and *quo warranto* was the appropriate action."

Without citing further authorities, it is sufficient to say that the rule above quoted is in entire harmony with the great weight of authority. In the case at bar it is not shown that the land of the relator is adapted to municipal purposes, and it is conceded that it has not been platted or dedicated to that purpose. It is a quarter of a mile distant and wholly disconnected from the platted and inhabited part of the village, and we fail to see how it could be in any way benefited by being included within the municipality. So we are of the opinion that the act of the incorporators in including the land of the relator rendered the whole proceeding void.

It is further contended that at the time the order was made the proposed village did not contain 200 actual residents. While the district court found generally to the contrary, is seems to us that the finding is not sustained by the evidence. D. L. Pond, the husband of the relator, made an accurate count of the inhabitants of the proposed village in the same month and year that the resolution of incorporation was passed. He testifies positively, and from his own personal knowledge, that there were 135 residents of the town proper; 30 persons residing on the out-lots, and that was all that he found on the quarter section on which the townsite is situated; that there were living on the land of the relator and the acre tracts sold by her which were wrongfully included within the boundaries of the corporation 24 persons, making, all told, 189 actual residents within the boundaries of the proposed

corporation. Clara Pond, a witness for the relator, testified, in substance, that in the month of April, 1902, she made a house to house canvass of the people who lived in the town at that time; that she found south of the railroad 169 people; that on the lands of the relator and the acre lots sold by her there lived 24 persons, making a total of 193 inhabitants, all told. It is true that some of the witnesses for the respondents testified that at the time the order of incorporation was made there were within the boundaries of the village 215 actual residents. It appears, however, that none of these witnesses made a house to house count in order to ascertain the correct number of such residents, but merely estimated the number in the several families residing on and in the vicinity of the townsite, and that in order to make 215 residents they counted the 24 persons living on the land which was wrongfully and unlawfully included within the proposed corporate limits, together with domestic servants and transients found by them in the village at that time. So it appears from the respondents' evidence that at the time the resolution of incorporation was adopted the proposed village did not contain the necessary 200 actual residents required by the statute, without counting the 24 persons residing on the relator's land and the acre property sold by her which was wrongfully included within the corporate limits. The village organization in question has, therefore, no legal existence. *State v. Uridil*, 37 Neb. 371.

The judgment of the district court is therefore reversed and the cause is remanded, with directions to that court to enter the proper judgment of ouster.

JUDGMENT ACCORDINGLY.