THE UNITED STATES OF AMERICA, Appellant, *vs.* LOUIS HRASKY, Appellee.

*Opinion filed June 16, 1909.*

1. APPEALS AND ERRORS—*case involving elective franchise goes directly to the Supreme Court.* A decision of a State court having jurisdiction of a naturalization proceeding which determines the right of the petitioner to exercise the elective franchise involves a franchise, and an appeal therefrom lies directly to the Supreme Court.

2. NATURALIZATION—*court's discretion to determine an alien's fitness for citizenship is not arbitrary.* While the Federal statute provides that the facts authorizing naturalization shall appear to the satisfaction of the court, yet the court's discretion to determine the applicant's fitness for citizenship is not arbitrary but is a sound legal discretion, which is subject to review.

3. SAME—*Federal statute requires applicant to be of good character and not merely reputation.* The Federal statute requiring an applicant for naturalization to have "behaved as a man of good moral character" means more than that he shall have a good reputation, and requires that his conduct, generally, shall have been such as is authorized by law.

4. SAME—*alien knowingly violating Sunday Closing law and intending to continue such violation should not be naturalized.* An alien resident of Illinois who has habitually and knowingly violated the Sunday Closing law, which is in force in all parts of the State, by keeping the back door of his saloon open on Sundays,

and who intends to continue such violation after he is naturalized, should be denied naturalization, notwithstanding many citizens of the United States engaged in the same business habitually violate such law in like manner.

APPEAL from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

MILTON M. DEARING, for appellant.

Per CURIAM: October 29, 1908, appellee filed in the city court of East St. Louis a petition for naturalization under section 4 of the Naturalization act of June 29, 1906. (34 Stat. Law, 596.) That section provides, among other things, that it shall be made to appear to the satisfaction of the court that the person desiring citizenship has resided in the United States at least five years preceding his application and one year in the State, "and that during that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States and well disposed to the good order and happiness of the same." The statute further provides that two witnesses shall testify as to the applicant's residence, moral character and attachment to the principles of the constitution. When the petition came on for hearing in that court, February 13, 1909, appellee testified that he was a native of Austria and came to East St. Louis to live May 8, 1903; that he had been in the saloon business for more than three years; that he was familiar with the State law requiring the closing of the saloons on Sunday in Illinois and had known of its requirements for over two years; that in spite of that fact he had kept the back door of his saloon open on Sunday regularly, and, although he should take an oath to support the United States constitution and laws, he would continue to keep the back door of his saloon open on Sundays. The representative of the Federal government objected to appellee being admitted to citizenship, on the ground that he

240—36

had not shown himself to be a man of good moral character and well disposed to the good order and happiness of the United States and that he manifested a disposition to continue to violate the laws of the State of Illinois, at the same time, however, conceding that, as a matter of general practice, saloon-keepers in East St. Louis and many other large cities of the State, in spite of the law upon the subject, regularly keep the back doors of their saloons open on Sundays, regardless of the nationality of the saloon-keeper, and further conceding "that this practice is permitted by the mayor and police authorities of the cities referred to." The court, while stating that the legal question was not free from doubt, overruled the government's objection "for the reason that it conceded that people in the same business (saloon-keeping) in this city and Chicago and other cities in the State of Illinois, irrespective of nationality, keep the back doors of their saloons open on Sunday, and it seems to me to be unreasonable to require a man seeking citizenship in this country to observe the laws more strictly than native-born citizens are required to observe them, especially when the authorities of the cities referred to permit persons in that business to keep the back doors open on Sunday."

The first question necessary to decide is whether this case involves a franchise, as that term is used in section 118 of the Practice act, (Hurd's Stat. 1908, p. 1637,) so that it was rightly appealed from the city court to this court. In *People* v. *Holtz,* 92 Ill. 426, in discussing the meaning of the word "franchise" as applied to appeals from trial courts to this court, we said (p. 429) : "If the constitutional convention and the General Assembly used the term according with its strict legal import,—and we must presume they did,—then in this country it can only embrace corporations, ferries, bridges, wharfs and the like where tolls are authorized to be taken, and we may add the elective franchise, as it is granted by the constitution to a

portion of the people to elect their officers." This decision has never been overruled on this point, and the reasoning of this court in *Board of Trade* v. *People*, 91 Ill. 80, *Chicago and Western Indiana Railroad Co.* v. *Dunbar*, 95 id. 571, and *People* v. *Cannon*, 236 id. 179, tends to support the same holding. The naturalization of the petitioner would permit him to exercise the elective franchise and a refusal would deprive him of that right. We think, therefore, it must be held that the elective franchise was involved, and that under the authorities just cited the appeal was properly taken to this court.

The city court of East St. Louis has conferred upon it jurisdiction to naturalize aliens as citizens. (VanDyne on Naturalization, pp. 11-19, inclusive; *Mills* v. *McCabe*, 44 Ill. 194; *Levin* v. *United States*, 128 Fed. Rep. 826.) The United States statutes provide that the facts to justify the naturalization of the applicant shall appear to the satisfaction of the court. There is vested, therefore, in that tribunal the discretion to determine whether an alien is fit for admission. But this discretion is not arbitrary. It must be a sound judicial discretion, and if abused is subject to review. (*Anderson Transfer Co.* v. *Fuller*, 174 Ill. 221; 9 Am. & Eng. Ency. of Law,—2d ed.—p. 473.) It must be regulated according to known rules of law, and is a legal and not a personal discretion. (14 Cyc. 384, and cases there cited.)

The Sunday Closing law, so-called, is in force in all parts of this State. (*People* v. *Busse*, 238 Ill. 593; *Koop* v. *People*, 47 id. 327; *Kroer* v. *People*, 78 id. 294.) Has a person who has knowingly and habitually violated this law behaved as "a man of good moral character" and one who is "well disposed to the good order" of this people?

While the word "character" is frequently used as synonymous with reputation, strictly speaking character is what a person is, while reputation is what he is supposed to be. (5 Am. & Eng. Ency. of Law,—2d ed.—p. 852; 6 Cyc.

p. 892, and cases cited.) In discussing a former United States statute which had the identical provisions as to good character, the United States circuit court, in *In re Spenser,* 5 Sawyer, 195, said (p. 196): "The applicant must not simply have sustained a good reputation, but his conduct must have been such as comports with a good character. In other words, he must have behaved—conducted himself—as a man of good moral character ordinarily would, should or does. Character consists of the qualities which constitute the individual; reputation the sum of opinions entertained concerning him. The former is interior; the latter external. The one is the substance; the other the shadow." See, also, Words and Phrases, 1061, 1063.

We concur in the view that the word "character," as used in this statute, is not synonymous with "reputation;" that what it is here intended to mean is what the person really is. Good behavior is defined to be conduct authorized by law; bad behavior such as the law punishes. (Bouvier's Law Dict.; 2 Blackstone's Com. book 4, \*251, \*256.) The phrase "during good behavior" is defined by the Standard Dictionary as "while conducting oneself conformably to law." Anderson's Law Dictionary defines behavior as "the bearing with respect to propriety, morals and the requirements of law." "Good moral character," within the meaning of this statute, may not be easy to determine in all cases and under all circumstances. The standard doubtless will vary from one generation to another. In discussing this question in *In re Spenser, supra,* the court said (p. 198): "It may be said that an alien who has otherwise behaved as a man of good moral character during a residence in the country of at least five years ought not to be denied admission to citizenship on account of the commission, in that time, of a single illegal or immoral act. This suggestion is based upon the idea that it is sufficient if the behavior of the applicant was generally good,—that the good preponderated over the evil. In some sense this

may be correct. For instance, the law of the State prohibits gaming and the unlicensed sale of spirituous liquors. These acts thereby become immoral. But their criminality consists in their being prohibited and not because they are deemed to be intrinsically wrong—*mala in se*. Now, if an applicant for naturalization whose behavior during a period of five or more years was otherwise good was shown to have committed during that time either of those or similar crimes, I am not prepared to say that his application ought to be denied on account of his behavior; and yet it is clear that anything like habitual gaming or vending of liquors under such circumstances would constitute bad behavior—immoral behavior—and be a bar, under the statute, to admission to citizenship."

Whether an applicant should be naturalized who has committed only a single offense of the nature of the one here charged is not in this case and need not be decided. Neither is the question as to whether an applicant should be naturalized who has formerly been a habitual violater of the law but admits his wrongdoing and for years has been observing the law. Both these hypothetical cases are very different from the one now before us. Can a man be said to be "well disposed to the good order" of this country when he has knowingly, willfully and habitually violated the laws of the State in which he resides and intends to continue doing the same if he is naturalized? The question answers itself. While it is true that this is a "government of the people, by the people, for the people," it is just as true that it is a "government of laws and not of men." It is essential to the safety and perpetuity of government that laws should be observed and enforced until repealed. The decision as to the wisdom of the Sunday Closing statute rests with the legislature and not with the courts. As long as it is the law it should be observed. The courts should not be, and as a rule are not, charged with executive or legislative functions, but they are charged with the respon-

sibility of deciding, when the question is properly presented, that a law is in force even if it is not observed by all citizens or enforced by all public authorities.

In discussing the subject of naturalization in *In re Clark,* 18 Barb. 444, the Supreme Court of New York said, on page 448: "The intention was to permit those who came here from abroad seeking a permanent home, who by five years of continuous residence manifested that intention, and by good behavior during all that time and an attachment to republican principles,—a good behavior and an attachment to republican principles which could be proved to the satisfaction of a court,—had shown themselves worthy recipients of the benefits to be derived from citizenship and safe depositories of the powers it confers, to be admitted to these rights and the exercise of these powers by an order entered in open court after an examination into the facts of each case and a judicial decision upon the application,—an examination which should be conducted with the same care and a decision which should be made with the same deliberation and solemnity as that which should accompany every other judicial act."

Applying these principles of law, it is our duty to hold that a person has not behaved as a man of good moral character and one well disposed to the good order of this country if he has habitually, knowingly and willfully violated the Sunday Closing law. The petitioner in this case had not only done this for the three years immediately preceding his application, but he stated that he intended, if he were naturalized, to continue to violate that law. His application to be naturalized should have been denied.

The judgment of the city court of East St. Louis admitting appellee to be a citizen of the United States of America will be reversed and set aside and the case remanded to that court, with directions to refuse appellee a certificate of naturalization.

*Reversed and remanded, with directions.*