STATE, EX REL. WILLIAM V. BANTA, APPELLEE, V. GEORGE
R. GREER ET AL., APPELLANTS.

FILED FEBRUARY 10, 1910.    No. 15,914.

Quo Warranto: VILLAGE TRUSTEES: PARTIES.  After the corporate exist-
ence of a village has been legally terminated by a vote of the
electors, persons subsequently assuming to act as village trustees
may be ousted in a proceeding in the nature of *quo warranto;*
and, when the county attorney has given his consent, an action
for that purpose may be instituted and maintained by an elector
whose property is being assessed by defendants for village pur-
poses.

APPEAL from the district court for Harlan county:
HARRY S. DUNGAN, JUDGE.  *Affirmed.*

*John Everson* and *Gomer Thomas,* for appellants.

*C. M. Miller* and *J. M. Mohney, contra.*

ROSE, J.

Defendants were assuming to act as trustees of the
village of East Oxford, and this is an action in the nature
of *quo warranto* to oust them as such on the ground that
the corporate existence of the village had been terminated
by a vote of the electors at an election held November 6,
1906.  The district court granted a writ of ouster April
11, 1908, and defendants have appealed to this court.

The first point argued by defendants as a ground of
reversal is that the information does not state a cause of
action, because it shows on its face that relator, William
V. Banta, is a private individual having no right or au-
thority to institute or maintain the suit.  Defendants
state their position as follows: "William V. Banta is a
taxpayer and a resident of the village of East Oxford,
Nebraska.  The village had caused to be levied upon his
property taxes to the amount of $2.35 for village purposes.
This is the only interest he has in the suit.  He does not

claim either of the offices held by the respondents, or any one of them. He has no more interest in the results of this suit than any other resident of the village. The purpose of the suit is to oust all of the village officers, because, as the relator says, the village has no legal existence. Can an individual in his private capacity and without the consent of the state, by its proper officers, test the legal existence of a municipal corporation? If he can, the complaint may state a cause of action, but if not, it does not, and the judgment entered by the trial court must be reversed and the action dismissed."

If the allegations of the information are true, the incorporation of the village of East Oxford was abolished by the votes of a majority of the electors who voted on that question. The power to terminate such an incorporation by ballot is granted to the electors by statute, and when it has been legally exercised by a majority vote the municipal existence of the village ceases, "after the first day of January next ensuing," and thereafter the village must be governed by the county commissioners. Comp. St. 1905, ch. 14, art. I, secs. 55c-55g. It not only appears on the face of the petition that the village government has been abolished, but that defendants are usurping and exercising the powers of trustees. The usual remedy for preventing such a usurpation and averting its consequences is a writ of ouster. May a citizen who is a taxpayer and elector invoke such a remedy? May he ask the court to oust usurpers who are attempting to run a village government having no existence, and who are levying against his property taxes having no authorization in law?

The code declares: "An information may be filed against any person unlawfully holding or exercising any public office or franchise within this state, or any office in any corporation created by the laws of this state, or when any public officer has done or suffered any act which works a forfeiture of his office, or when any persons act as a corporation within this state without being authorized

by law, or if, being incorporated, they do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation, or when they exercise powers not conferred by law." Code, sec. 704. Under this section persons who assume to act as officers of a village having no legal existence may be ousted. *State v. Uridil,* 37 Neb. 371. Such proceedings are not limited to cases prosecuted by the attorney general in the supreme court. Informations may be filed by the county attorney of the proper county. Code, sec. 705. In the present case the information recites that the proceeding was commenced with the consent of the county attorney of Harlan county, and that fact was indorsed by him on the information. In *State v. Clark,* 75 Neb. 620, it was held that the owner of land illegally included within the corporate limits of a village could maintain an action in the nature of *quo warranto* to determine the validity of the order of incorporation. By such means he could protect his rural property from illegal control and from taxation for municipal purposes. In the present case the information shows that defendants subjected relator and his property to the burdens of a village government having no legal existence, when the village with its incidental burdens was under the lawful control of the county commissioners. Substantial reasons for the rule stated are just as inherent in the case at bar. In addition, the electors themselves terminated the corporate existence of the village, and relator was entitled to the fruits of the election. Under the facts pleaded he was properly allowed to invoke the appropriate remedy of *quo warranto,* since he was duly authorized by the county attorney to do so.

It is also argued by defendants that the incorporation was not abolished, for the reason that "valid, unpaid indebtedness existed against the village when the alleged ballot to dissolve it was taken." This argument is founded on the following proviso to the statutory provision authorizing the county clerk to submit to the voters the proposition to abolish the incorporation: "Provided,

that no village shall abolish incorporation until all liabilities are liquidated." Comp. St. 1905, ch. 14, art. I, sec. 55d. This proviso clearly relates to abolishment by ballot. The only unpaid claims proved were two judgments for costs rendered November 16, 1906, ten days after village government had been abolished at the election. Both judgments were paid before the writ of ouster was allowed. This point is therefore without merit.

Other questions raised have been considered, without finding reversible error in the record. The judgment is therefore

AFFIRMED.