**NATIONAL ASS'N OF SECURITIES DEAL-ERS, Inc., v. SECURITIES AND EXCHANGE COMMISSION et al.**

No. 8464.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 6, 1944.

Decided April 20, 1944.

As Amended April 26, May 1, and June 9, 1944.

Paul W. Frum, of Cleveland, Ohio, (Baker, Hostetler & Patterson and Joseph

C. Hostetler, all of Cleveland, Ohio, on the brief), for petitioner.

Orrin C. Knudsen, of Philadelphia, Pa. (John F. Davis, and Arden L. Andresen, both of Philadelphia, Pa., on the brief), for respondent Securities and Exchange Commission.

William A. Lockwood and Thomas A. McGovern, both of New York City (Reed, Truslow, Crane & de Give, of New York City, on the brief), for respondent New York Curb Exchange.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

In this case we must decide whether a determination by the Securities and Exchange Commission that there exists in the vicinity of the New York Curb Exchange sufficiently widespread public distribution of certain bonds[1] and sufficient public trading activity in them to render the extension of unlisted trading privileges on the Curb to that security necessary or appropriate in the public interest or for the protection of investors.

The Curb, a registered national securities exchange, filed with the Commission its application pursuant to Section 12(f), clause (3), of the Securities Exchange Act of 1934 as amended asking the extension of unlisted trading privileges to Kentucky 4% bonds.[2] National Association of Security Dealers, Inc.,[3] intervened in the proceedings before the Commission. The Curb's application asserted that the portion of the

---

[1] Two securities issued by Kentucky Utilities Company were involved originally in this case. These were respectively, First Mortgage Bonds, 4% Series, due January 1, 1970, hereinafter referred to as "Kentucky 4% bonds," and 4½% Sinking Fund Mortgage Bonds, due February 1, 1955, hereinafter referred to as "Kentucky 4½% bonds." The Commission by its order of July 3, 1943, reviewed in this opinion, approved the Curb's application for permission to extend unlisted trading privileges to the Kentucky 4% bonds and denied the Curb's application to the Kentucky 4½% bonds. The Curb has not filed a petition to review the latter part of the Commission's order.

A security issued by Central Power and Light Company, First Mortgage Bonds, Series A, 3¾%, due August 1, 1969, was the subject of a separate but similar application by the New York Curb Exchange. These bonds have been redeemed and therefore the controversy with respect to them has become moot. We do not consider that controversy to have been of sufficient public importance to bring the issues presented within the ruling of such decisions as Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 514, 516, 31 S.Ct. 279, 55 L.Ed. 310, or Boise City Irrigation & Land Co. v. Clark, 9 Cir., 131 F. 415, 418, 419.

In the case at bar, therefore, we are concerned only with the application relating to the Kentucky 4% bonds.

[2] The pertinent provisions of Section 12(f) of the Act, 15 U.S.C.A. § 78*l*(f) are as follows:

Section 12.

"(f) * * * any national securities exchange, upon application to and approval of such application by the Commission and subject to the terms and conditions hereinafter set forth, * * * (3) may extend unlisted trading privileges to any security in respect of which there is available from a registration statement and periodic reports or other data filed pursuant to rules or regulations prescribed by the Commission under this title or the Securities Act of 1933, as amended, information substantially equivalent to that available pursuant to rules or regulations of the Commission in respect of a security duly listed and registered on a national securities exchange, * * *.

"No application pursuant to this subsection shall be approved unless the Commission finds that the continuation or extension of unlisted trading privileges pursuant to such application is necessary or appropriate in the public interest or for the protection of investors. * * * No application to extend unlisted trading privileges to any security pursuant to clause (2) or (3) of this subsection shall be approved unless the applicant exchange shall establish to the satisfaction of the Commission that there exists in the vicinity of such exchange sufficiently widespread public distribution of such security and sufficient public trading activity therein to render the extension of unlisted trading privileges on such exchange thereto necessary or appropriate in the public interest or for the protection of investors. * * * *"

[3] At the time that National Association of Security Dealers, Inc. (referred to hereinafter as NASD) filed its petition for review with this court it had 2,243 members who are primarily over-the-counter brokers and dealers, as distinguished from brokers and dealers who

United States lying east of the Mississippi River constituted its "vicinity" as to the Kentucky 4% bonds. NASD contended that that vicinity should be restricted to an extent which we will point out hereafter. Notice was given and a hearing was had before a trial examiner who filed advisory findings which need not be set out here. Exceptions were filed to these findings and argument was had before the Commission. After a review of the record the Commission found[4] that " * * * there exists in the vicinity of the Curb Exchange sufficiently widespread public distribution of the bonds and sufficient public trading activity therein to render the extension of unlisted trading privileges on the Curb to the bonds necessary and appropriate in the public interest and for the protection of investors * * *."

Pursuant to the provisions of Section 25(a) of the Act, 15 U.S.C.A. § 78y(a) NASD petitioned this court to review the Commission's order and to set it aside insofar as it approves the Curb's application to extend unlisted trading privileges to the bonds.

The petitioner asserts first that the Commission erred in defining the "vicinity" of the Curb Exchange. Direct evidence of the vicinity or area in which investors regard the Curb as a market being unavailable, the Curb, as it had done in many other cases,[5] introduced evidence showing the location of offices of Curb members and the maintenance of Curb ticker service in certain localities. Assuming, as we must, that trading courses through those channels which are the most open to it, the Commission's inference that offices of Curb members would not be maintained and that facilities would not exist in localities which do not supply business for the exchange, is a fair one. Conversely, the inference that there is some business where offices and facilities exist, is a supportable one. The Commission also received evidence as to the number of persons to whom the bonds had been distributed originally, the amount of bonds so distributed and the localities of the distributees by States. We shall not review specifically the evidence which was before the Commission. It is sufficient to state that the Commission reached the conclusion that the vicinity of the Curb should include for the purpose of the application which we are discussing, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania and Ohio. The petitioner had insisted that the vicinity must be limited either to New York City, to an area within one hour's commuting distance of New York City, or to a territory enclosed by lines midway between New York City and Philadelphia and New York City and Boston, Philadelphia and Boston being those cities nearest to New York City in which there are securities exchanges extending unlisted trading privileges.

What is the "vicinity" of the Curb? The word certainly is not one of art. It is capable of a broad or narrow construction, depending upon the object to which it is to be related. For example, New Jersey and Delaware both may be said to be in the vicinity of Pennsylvania. On the other hand the vicinity of City Hall Square, Philadelphia, would not take one to the suburbs of Philadelphia. The word is not defined in the Act.[6] We con-

---

are members of national securities exchanges. The members of NASD have places of business in all parts of the United States and engage collectively in all branches of investment banking and in selling securities. The nature of NASD is fully set out and explained in Matter of National Association of Securities Dealers, Inc., 5 S.E.C. 627 (1939). It appears that NASD is a non-profit membership corporation, organized under the laws of Delaware and registered with the Commission as a national securities association pursuant to Section 15A of the Act, 15 U.S.C.A. § 78o-3.

[4] Commissioner Healy dissented on the ground that the applicant Exchange had not made a showing by a fair preponderance of the evidence that there exists in the vicinity as defined by the Commission sufficient public trading activity in the bonds to render the existence of unlisted trading privileges necessary or appropriate in the public interest or for the protection of investors.

[5] See the decisions of the Commission relating to applications of the Curb and other exchanges, cited in Notes 7 and 8 infra.

[6] The legislative history of the Act makes no specific reference to the word "vicinity". Reports of Congressional Committees, however, state that the approach of the Act "may be described as an endeavor to create a fair field of competition among exchanges and between exchanges as a group and the over-the-counter markets and to allow each type of market to develop in accordance with its natural genius and

clude, therefore, that Congress intended a practical test. The Commission invariably has endeavored to apply such a test.

There have been many decisions by the Commission as to what constitutes the vicinity of the Curb in respect to extending unlisted trading privileges to securities. In the Matter of Applications by the New York Curb Exchange for Unlisted Trading Privileges, 3 SEC 81, 85, the Curb had insisted that its vicinity included the whole of the United States. The Commission stated that "Congress must have had in mind something more than the mere circulation of information [concerning securities to possible customers] or it would have chosen a more appropriate word than 'vicinity'. Rather, we interpret 'vicinity' to mean the particular geographical section or sections in which a particular exchange ranks as the, or one of the, national exchanges to which investors would look for an exchange market in the securities for which unlisted trading is sought." It will be noted that emphasis was laid on the relation of the securities for which unlisted trading privileges are sought to the applicant exchange as well as upon the geographical section or sections in which that exchange could be considered to rank as one of the national exchanges. Obviously the Commission considered that one of the essential elements to be employed in determining the vicinity of the exchange is the nature of the security for which unlisted trading privileges are sought, and the extent and kind of the public holdings in it. The vicinity, therefore, of a particular exchange may vary with the distribution and other factors relating to a particular security. It seems to us that the Commission itself clearly has recognized this fact in numerous decisions.[7]

In respect to applications made by the New York Curb Exchange the Commission has allowed to it different and varying vicinities depending upon the securities involved, their distribution and other factors relating to them as well as to the facilities possessed by the exchange itself, such as members' offices and ticker services.[8] These vicinities have varied from that allowed the Curb in the instant case. In Applications by the San Francisco Curb Exchange, 2 SEC 653, in note 6 at p. 657, the Commission commented upon this conception of varying vicinity and expressly disapproved it. The Commission stated, "It is true that the concept of the vicinity of an exchange is a flexible one, the limits of which may differ under different circumstances. But under Section 12(f), we must first determine the vicinity of the exchange and then consider whether distribution of the security within that vicinity is sufficient. The vicinity of the exchange thus constitutes the area within which the distribution of the security must be sufficient. It would reverse the plain meaning of Section 12(f) to hold that the area within which the distribution of the security is deemed to be sufficient constitutes or largely determines the vicinity of the exchange, although conceivably in some cases it might be relevant to such a determination." The position of the Commission is ambiguous for it seems to us that in determining vicinity the Commission has of necessity considered the nature of the security, its distribution and other factors which must be distinguished from simple geographical area. That the Commission has weighed these factors is demonstrated by the fact, as we have said, the vicinity of the Curb has been held by the Commission to vary with the security. See notes 7 and 8 supra. If an exchange's vicinity depended solely on geographical considerations it could not vary. We think that it is not a constant and that an exchange's vicinity must vary with the security.

We can conceive, of course, of circumstances in which a most widespread distribution of a security might not aid an exchange in establishing a vicinity in

consistently with the public interest." See S.Rep.1739, 74th Cong., 2nd Sess., p. 33, and H.R.Rep. 2601, 74th Cong., 2nd Sess., p. 4.

[7] For example in Applications by the Pittsburgh Stock Exchange, 2 SEC 178, 187, the Commission states that the vicinity of the applicant exchange " * * * for the purpose of these applications" includes certain named states. See also Application by the New York Curb Exchange, 4 SEC 560, 561; Ap-

plication by the Cleveland Stock Exchange, 4 SEC 895, 897, and Application by the Los Angeles Stock Exchange, 6 SEC 310, 313.

[8] See Edison Electric Illuminating Company of Boston, 1 SEC 909; Applications by the New York Curb Exchange, 2 SEC 732; Applications by the New York Curb Exchange, 3 SEC 81; 4 SEC 555, Idem 560, Idem 899, 6 SEC 901, and 7 SEC 672.

respect to an application for extending unlisted trading privileges to that security. For example, there might be a very extensive distribution of a given security in an area in which the Curb had neither members or facilities. Such an area could not be considered to be in the vicinity of the Curb. On the other hand if Curb facilities are present in a given locality, the extent of the distribution and nature of the holdings of a certain security in that locality must be deemed to be relevant in determining vicinity. We conclude that this is what the Commission had in mind when it made use of the words last quoted. The Commission must consider the circumstances attendant upon each application made to it and decide it on the particular facts inhering in each case. Vicinity, a word indefinite in meaning, was not intended by Congress to fasten to an exchange a fixed area as a vicinity without regard to the nature or distribution of the security for which unlisted trading privileges are sought. On the contrary, Congress intended to cause the Commission to approve the extension of unlisted trading privileges to a security when the applicant exchange can demonstrate its ability to support an adequate market in that security and the extension of the privilege is required in the public interest or for public protection. Vicinity may furnish a movable feast. We conclude therefore that the definition employed by the Commission in the Matter of Applications by the New York Curb Exchange, 3 SEC at p. 85, hereinbefore quoted, is a sound and legal definition. The Commission has applied its substance in the case at bar. .

■ We think that the Commission could have included in the vicinity of the Curb as to the Kentucky 4% bonds a wider area than it did but there is substantial evidence to support the Commission's conclusion that there is sufficient public distribution and sufficient public trading in the area defined by the Commission to constitute it the Curb's vicinity. It appears also that it is necessary to extend unlisted trading privileges in the bonds to the Curb in the public interest and for public protection. The Commission's finding in this respect finds adequate support in the very nature of the securities. They are public utility bonds of the kind which the ordinary purchaser expects to be able to buy or sell on a national exchange. The granting of the unlisted trading privilege will subject trading in the bonds to the supervision of the Curb and to the provisions of the Securities Exchange Act insofar as exchange trading is concerned. Investors will still be able to avail themselves of the over-the-counter market. The extension of unlisted trading privileges will provide an additional public market with facilities for quick trading.

■ The petitioner has laid emphasis upon the provisions of Section 12(f) that no application shall be approved unless the applicant exchange shall establish to the satisfaction of the Commission the existence of the conditions prescribed by the Act. But, giving fullest scope to the intent of Congress as to the burden of proof which must be sustained by an applicant, we conclude that the Curb has met and carried that burden. The phrase "establish to the satisfaction of the Commission" does not mean that the Commission may either capriciously extend the unlisted trading privilege to a security upon the application of an exchange or whimsically withhold it. Such would constitute a breach of the Commission's discretion. What the statute requires is that the applicant exchange shall present substantial evidence to the Commission of the existence of the conditions prescribed by the Section and if such evidence is presented to it the Commission must extend the privilege. We think that it is clear that the Curb has met the burden prescribed by the Section and that the Commission committed no error of law in so regarding the evidence.

■ The order of the Commission insofar as it relates to the application for the extension of unlisted trading privileges to the Kentucky 4% bonds is affirmed. The petition for review is dismissed insofar as it relates to the application in respect to the First Mortgage Bonds of Central Power and Light Company for all questions relating to the latter application have become moot.