430 P.2d 122

The STATE of Arizona ex rel. Robert W. PICKRELL, Attorney General of the State of Arizona, Appellant,

v.

Patrick C. DOWNEY, Mayor, Samuel Hoover, E. Robert Tribkin, Jack F. Jennings, Jack Huntress, Leonard Deehan and George Andress, comprising the members of the Town Council of the Town of Paradise Valley, Appellees.

No. 7883.

Supreme Court of Arizona,
In Banc.

July 6, 1967.
Rehearing Denied Nov. 14, 1967.

Darrell F. Smith, Atty. Gen., Joseph P. Ralston, Special Asst. Atty. Gen., for appellant.

John E. Madden, (deceased), John S. Schaper, Mark Wilmer, Phoenix, for appellees.

BERNSTEIN, Chief Justice.

This is an action in quo warranto.

On April 14, 1961 a petition to incorporate The Town of Paradise Valley an area of approximately 2.85 square miles in Paradise Valley was filed with the Board of Supervisors of Maricopa County. The Board held a hearing on the validity of the petition May 8, 1961 wherein both proponents and opponents were given opportunity to be heard. On May 24, 1961 the Board passed a resolution declaring the "Town of Paradise Valley" incorporated.

Subsequent to the passage of the Resolution of the Board the Attorney General, in the name of the state, instituted proceedings in quo warranto. The quo warranto sought the ouster of appellees, they being the mayor and certain members of the town council on the grounds that the resolution of the Board of Supervisors was null and void. This appeal is taken from a judgment rendered against the state.

The state contends that the Board of Supervisors of Maricopa County was without jurisdiction to create the Town of Paradise Valley and its acts in creating the "Town of Paradise Valley" were void for the reason that the purported incorporation of the town did not comply with A.R.S. § 9–101 in that, one, the petition lacked the signatures of two thirds of all "the real property taxpayers residing" in the area; two, the Board abused its discretion in determining that two thirds had signed the petition and; three, the area sought to be

incorporated did not constitute a community within the definition contained in A.R.S. § 9–101, subsec. D.

Sections 9–101, subsec. A and 9–101, subsec. D read as follows:

"§ 9–101. Incorporation

A. When two thirds of the real property taxpayers residing in a community containing a population of five hundred or more inhabitants petition the board of supervisors, setting forth the metes and bounds of the community, and the name under which the petitioners desire to be incorporated, and praying for the incorporation of the community into a city or town, and the board is satisfied that two thirds of the real property taxpayers residing in the community have signed the petition, it shall, by an order entered of record, declare the community incorporated as a city or town.

D. For the purposes of this section, the word community shall mean a locality in which a body of people reside in more or less proximity having common interests in such services as public health, public protection, fire protection, and water which bind together the people of the area, and where the people are acquainted and mingle in business, social, educational and recreational activities."

Pre-trial conference was held July 3, 1962 at which the trial court ordered that the case be tried on the basis of the record before the Maricopa County Board of Supervisors. During trial, on July 11, 1962, the appellant called a witness, John Burke, and upon indication from the trial court that no new testimony would be received, appellant made an offer of proof to the effect that Mr. Burke would qualify as an expert, having served ten years as City Clerk of Phoenix during which time it was his function to check annexation petitions; and further he had previously served as a hired expert for the Board of Supervisors of Maricopa County during proceedings for the incorporation of the Town of Cashion. Mr. Burke would further testify that he had used the same methods in checking the proposed incorporation of "The Town of Paradise Valley" and that as of the date of the Board hearing on the matter there were approximately 60 per cent of eligible real property taxpayers residing in the community who had signed the incorporation petition, and that in his opinion this did not qualify this area for incorporation under the requirements as stated in A.R.S. § 9–101, subsec. A.

The files and the transcript of the hearing before the Board of Supervisors, entered in evidence before the trial court reveal the following significant facts: The original petition dated April 14, was examined by the County Assessor and he reported to the Board by letter on April 17 "that petitions contain the names of 482 persons who were recorded property owners within the area and that the assessor's records showed the names of 653 owners of improved real property in the area." However, by letter on May 5, the County Assessor amended his report as follows: "On a recheck of the Paradise Valley Petitions for Incorporation, I find that 492 have signed * * * and from my records, 473 of these are recorded property owners. A recheck of today's ownership shows 711 owners of improved property in the district. The withdrawal petitions show 108 requests to be withdrawn from the petitions."

On the morning of the hearing, May 8, 30 new signatures were filed along with requests for reinstatement of 31 person who had previously withdrawn their names. The proponents for incorporation also filed affidavits to the effect that certain persons were not "year-round residents, domiciled within the area," and that certain residences within the area "were vacant and unoccupied."

Following the introduction of these affidavits one of the attorneys for the proponents argued that the Board in arriving at its conclusion, should (1) add 30 names; (2) exclude the 66 names contained in the body of the affidavits (including 17 corporation or company names); (3) exclude 53 signatures on the original petitions

who considered themselves to be non-residents. They argued that by so doing and by using the total figure of 711 and giving effect to part of the withdrawals the Board could find 67.2% had validly petitioned.

One of the attorneys for the opponents objected to the Board's giving consideration to affidavits of third persons to prove that a signer or non-signer was not "residing in the area". He objected further to the attempt of proponents to reduce the total number of property owners by deducting 17 parcels owned by corporations or companies since the testimony of the assessor's office showed that in arriving at the figure of 711 these 17 parcels were excluded. Further, testimony of opponents giving effect to 108 withdrawals, 31 rejections of withdrawals, and 30 additional signers revealed that only 59.41% of the owners of real property had signed the petitions.

The Board also listened to testimony and argument on the question of whether the area to be incorporated constituted a community as defined in A.R.S. § 9–101, subsec. D.

The only other evidence permitted to be introduced at trial, other than the files and transcript of the Board, was an aerial photograph of the surrounding area and an official map of the City of Phoenix and of Maricopa County.

Following rendition of formal judgment for appellees and denial of motion for new trial this appeal was perfected. The state sets out three assignments of error:

1. The Court erred in entering judgment that the community was validly incorporated, and that the act of the Supervisors in declaring such an incorporation was lawful, for the reason that the petition before the Board of Supervisors did not contain sufficient signatures to give the Board jurisdiction to declare the incorporation.

2. The Court erred in its pre-trial order that the case will be tried on the basis of the record before the Board of Supervisors, and in its trial order refusing to permit testimony from witness, John Burke to present testimony contained in the offer of proof.

3. The Court erred, as a matter of law, that the area described in the incorporation petition and as shown on the aerial photograph in evidence as Plaintiff's Exhibit "1" is a community as defined by A.R.S. § 9–101, subsec. D.

The appellant first contends that under the provisions of A.R.S. § 9–101, subsec. A, the Board of Supervisors is without jurisdiction to declare a community validly incorporated unless it has been presented with a petition containing the signatures of two thirds of all real property taxpayers residing in the area.

■ Clearly, under Article XIII, Section 1 of our Constitution, A.R.S., authority over municipal incorporation is vested in the legislature and its power over the methods and procedures for incorporation is plenary, Burton v. City of Tucson, 88 Ariz. 320, 356 P.2d 413 (1960).

■ It is equally clear that the legislature may delegate to a subordinate body, such as the Board of Supervisors, authority or discretion to carry out the execution of a legislative act. Peters, et al. v. Frye, 71 Ariz. 30, 223 P.2d 176 (1950). The courts will not and cannot interfere with subordinate boards when they properly exercise their delegated legislative authority in creating cities and towns; but the board of supervisors possesses only such power as is expressly conferred by statute, or is necessarily implied therefrom. Board of Supervisors v. Udall, 38 Ariz. 497, 1 P.2d 343.

The appellees urge that the language of A.R.S. § 9–101, subsec. A "the board is satisfied"—makes a board order of declaration of incorporation conclusive, and not subject to review. Appellees contend that such an order by the Board is based on a determination of a legislative fact, as opposed to a judicial or jurisdictional fact. Appellees rely upon earlier Arizona cases, Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382 (1915); Kenney v. Bank of Miami, 19

Ariz. 338, 170 P. 866 (1918); Town of South Tucson v. Board of Supervisors, 52 Ariz. 575, 84 P.2d 581 (1938).

We have reviewed these cases as well as other cases cited by appellee. In the Faulkner case we held that private citizens could not upset a board of supervisors order of incorporation through collateral attack. We noted therein that the "parties who bring this proceeding were not, under the law, entitled to be noticed or to be heard, except perhaps as a matter of grace, upon the petition for incorporation."

The cases of Kenney v. Board of Miami, supra, and Town of South Tucson, supra, are not directly in point as they are disincorporation cases rather than incorporation cases. Further, as we noted in Hunt v. Norton, 68 Ariz. 1, 198 P.2d 124, 5 A.L.R.2d 668 the following quote from the Kenney case is dicta to its holding and assuming we were to consider it controlling it would relate only to a *collateral* attack:

> "If the law imposes the duty upon the board to ascertain and pass upon the facts conferring jurisdiction upon it, a finding and decision by it of the existence of those facts is final and conclusive. *But, where the law makes it an indispensable condition that a certain fact or facts exist before the board can act, and fails to clothe it with the power and machinery to find the facts, its determination is: not final and conclusive."*
> (Emphasis added)

The appellees place emphasis on the first sentence of the above quote by relying heavily on the language in A.R.S. § 9–101, "the board is satisfied." By so doing appellees not only overlook the portion of the quote, the last sentence, but also the language in A.R.S. § 9–101 which actually confers jurisdiction upon the Board of Supervisors to incorporate a community.

▪ The discretion vested in the board by the language "the board is satisfied", is not an arbitrary or personal discretion. It is a legal discretion to determine whether the conditions of the statute have been met, i.e. whether "two thirds of

the real property taxpayers residing in a community" have petitioned. If such discretion is abused it is subject to review on direct attack. See National Ass'n. of Securities Dealers, Inc. v. Securities and Exchange Comm. et al, 3rd Cir., 143 F.2d 62, 66; United States v. Hrasky, 240 Ill. 560, 88 N.E. 1031, 1033.

▪ It is fundamental that no court of law, board or administrative agency can act without jurisdiction. It is for this reason that the legislature has provided the extraordinary remedy of *direct* attack in *quo warranto*. In the Faulkner case we noted "that the Legislature has provided a complete and ample remedy where there is a usurpation of any of the State's franchises. It is provided * * * that the Attorney General * * * may in proper cases institute proceedings in the nature of *quo warranto* against any person, association, or corporation who usurps any franchise * * *." p. 145, 149 P. page 384.

In Hunt v. Norton, 68 Ariz. 1, 7, 198 P.2d 124, 127, 5 A.L.R.2d 668, (1948) we said:

> "But when the Board * * * in question has power to act only upon the establishment of a certain set of facts which necessarily form the foundation of jurisdiction, and, therefore, may be denominated jurisdictional facts * *, a finding by such Board * * * that those facts do exist cannot foreclose inquiry by a court of competent jurisdiction * * *."

In Parnell v. State, 68 Ariz. 401, 206 P.2d 1047 (1949) a quo warranto proceeding, this court following Hunt v. Norton, supra, held "it was [the trial court's] duty to review the sufficiency of the evidence presented to the board in order to determine whether jurisdictional facts existed", and further "the determination of the existence of facts stated by the legislature to be essential to the incorporation of a municipality is judicial and properly exercised by the court."

▪ The power of the Board of Supervisors to legislate a community into

an incorporated city or town is not absolute. Article XIII, Section 1 of the Arizona Constitution provides that "[municipal corporations shall not be created by special laws, but * * * by general laws * * *" and the language of A.R.S. § 9–101, subsec. A, confers power upon the Board of Supervisors to declare an incorporation "when" and only when "two thirds of the real property taxpayers residing in a community containing a population of five hundred or more inhabitants petition * * *" Thus, to permit an incorporation by a Board, where less than two thirds petitioned, or where the population was less than 500 would be to permit the board to do what the legislature is constitutionally prohibited from doing, i.e. create a municipal corporation by special law.

■ The appellant next contends that in a proceeding in quo warranto, the trial court is not limited to a mere review of the record of prior proceedings, and that when questions of fact are raised by the pleadings, the court must accept evidence for proof of such facts. From our prior decisions, and those of other jurisdictions we must agree.

We think that the rule is well stated in 44 Am.Jur. 170, § 109:

"In quo warranto proceedings to determine the validity of a de facto incorporation, parol evidence is admissible to contradict the petition for incorporation, and to show that at the time of filing it the territory did not have the required population, notwithstanding the recitals in such petition to the contrary."

■ Whether those who signed the petition had the requisite qualifications (were they property owners, taxpayers, residents) can be questioned in quo warranto. West End et al v. State ex rel. O'Leary, 138 Ala. 295, 36 So. 423.[1] Whether the area has the requisite population may be gone into by the trial court. Kamp et al v. People, 141 Ill. 9, 30 N.E. 680; State ex rel. Pond v. Clark, 75 Neb. 620, 106 N.W. 971. And whether the requisite number have actually signed the petition is a material issue of jurisdictional fact. State ex rel. Quimby v. City of Reno, 71 Nev. 144, 282 P.2d 1071.

■ Under A.R.S. § 9–101, subsec. A the board's power to act, its jurisdiction, comes into play only when "two thirds of the real property taxpayers residing in a community containing a population of five hundred or more" have signed and filed a petition. The statute does not prescribe that the board shall investigate, determine, or ascertain how many inhabitants are in the area, or of these how many are real property taxpayers there residing; or what constitutes a real property taxpayer, or residence; or whether the signatures on the petition are valid; or whether they included as separate property owners husband and wife, lessor or lessee, contract purchaser or seller. Further, there is no showing that the Board on its own made any such findings. By statute they are not required or given the machinery to find such facts. They are not required to give notice or hold a hearing. Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424; Faulkner v. Board of Supervisors, supra.

---

**1.** The West End case is an excellent example of how fraud may be perpetrated if complete review on quo warranto is not permitted: "On the trial it was proved without dispute that shortly before the filing of the petition with the probate judge there had been an attempt to incorporate and a failure to procure signatures of the requisite number of freeholders; that one person, being advised of that failure, made what purported to be a deed for a lot in West End to fourteen other persons, who afterwards signed the petition, taking from them a note representing the agreed price of the lot, together with a mortgage on the lot purporting to secure the note; and that $5 and something else, not stated, had since been paid on the note. The evidence tends strongly to show the moving purpose of this transaction was to qualify the apparent purchasers to sign the petition for incorporation, and that the purpose was understood by those purchasers."

■ The direct attack made here strikes at the power of the Board to act, not at the correctness or wisdom of the decision which the Board has made after jurisdiction is indubitably conferred. State ex rel. School Dist. No. 25 v. Evans, 82 Or. 46, 160 P. 140.

■ The trial court should have admitted the testimony of not only the witness, Burke, but also all competent and material evidence, documentary or testimonial, going to the issue of jurisdiction of the Board to act.

Finally the appellant contends that "The Town of Paradise Valley" here sought to be incorporated does not constitute a community as defined by A.R.S. § 9–101, subsec. D, in that it contains no businesses nor industries, no retail stores, no professional nor governmental offices, no transportation facilities.

The appellant refers to the area as a "bedroom area" of R–2 zoned residences and urges that it is not a locality *"in which"* and "where" the people *"mingle"* in business, social, educational, and recreational activities. Appellant argues further that the aerial photo in evidence as well as the map attached to the incorporation petition clearly show that the corporate lines were so drawn as to exclude businesses, recreational and social and religious areas and certain residences, some of which, but for gerrymandering, would be in the heart of the area.

■ We have considered appellant's contentions under A.R.S. § 9–101, subsec. D, and find them to be without merit. Certainly a body of several hundred people residing within an area of 2.85 square miles "reside in more or less proximity". The people of the area have common interests in such services as public health, public protection, fire protection and water. The fact that some or most of these services may come from without the area or be available to others who are without the area sought to be incorporated does not make the interests in such services any less common to people within the area. We believe the statute does not contemplate that all such services be in existence at the time a community seeks incorporation.

■ We do not believe that there was a legislative intent to require that to be incorporated an area must have a shopping center or a business district in order to be "acquainted and mingle in business". The record shows they have similar business interests, professions, and occupations. We believe the definition of a community under A.R.S. § 9–101, subsec. D has been met.

Reversed and remanded for new trial.

McFARLAND, V. C. J., and STRUCKMEYER, UDALL and LOCKWOOD, JJ., concur.