714 P.2d 426

**GOODYEAR FARMS, an Arizona corporation; Litchfield Park Properties, an Arizona corporation; and Litchfield Park Service Company, an Arizona corporation, Petitioners-Appellants,**

v.

**The CITY OF AVONDALE, a municipal corporation, Respondent-Appellee.**

**No. CA–CIV 7127.**

Court of Appeals of Arizona, Division 1, Department D.

April 25, 1985.

Snell & Wilmer by Richard K. Mahrle Charles K. Ayers, Phoenix, for petitioners-appellants.

Frank L. Ross, Litchfield Park, for respondent-appellee.

MEYERSON, Presiding Judge.

This appeal concerns the constitutionality of Arizona's annexation statute. A.R.S. § 9–471(A)(1) (Supp.1984). We hold that this statute is unconstitutional in violation of the equal protection clauses of the United States and Arizona constitutions because it provides that only property owners may sign annexation petitions.

## I. FACTS

In 1981, the City of Avondale adopted an annexation ordinance and therein annexed certain property contiguous to its boundaries. Petitioners-appellants Goodyear Farms, Litchfield Park Properties and Litchfield Park Service Company (collectively referred to herein as Goodyear Farms) are corporations which own property in the annexed area. Goodyear Farms brought suit against the City alleging that the annexation ordinance was unlawful and unconstitutional under a variety of theories. Although Goodyear Farms' complaint does not per se mention the equal protection clause, the parties' cross-motions for summary judgment are devoted primarily to this constitutional provision. The trial court granted the City's motion for summary judgment and entered judgment in favor of the City. Goodyear Farms then brought this appeal.

## II. THE ANNEXATION STATUTE

Annexation statutes vary throughout the United States. *See generally* Comment, The Right to Vote in Municipal Annexations, 88 Harv.L.Rev. 1571 (1975) (Comment). Arizona is one of a number of states which provides "for expression of popular support or opposition to a proposed annexation through the signing of a petition." Comment at 1604. In Arizona, the annexation process may only be initiated as follows:

A city or town may extend and increase its corporate limits in the following manner:

On presentation of a petition in writing signed by the owners of not less than one-half in value of the real and personal property as would be subject to taxation by the city or town in the event of annexation, in any territory contiguous to the city or town, as shown by the last assessment of the property, and not embraced

within the city or town limits, the governing body of the city or town may, by ordinance, annex the territory to such city or town.

§ 9–471(A)(1). The annexation statute has been drafted to reflect the will of the territory to be annexed as well as the will of the city or town which has chosen to annex. The former is represented through petition signators constituting "the owners of not less than one-half in value of the real and personal property" which would be subject to taxation by the city or town. The latter is represented by the governing body of the city or town—the city or town council.

The petition must set forth a description of the exterior boundaries of the area proposed to be annexed. § 9–471(A)(2). Upon the first reading of the annexation ordinance, the city or town must file a copy of the ordinance, with an accurate map of the annexed area, in the office of the county recorder of the county where the area is located. § 9–471(A)(3). At this point, the area is withdrawn from further annexation by any other city or town. § 9–471(B). Within ten days, the city or town is required to send a written notice of the annexation proposal to each owner of real property located in the territory proposed to be annexed. *Id.* Any city or town, the attorney general, the county attorney or any other interested party may upon verified petition question the validity of the annexation for failure to comply with the provisions of the statute. § 9–471(C). Goodyear Farms brought its action pursuant to this provision. The annexation becomes final after the expiration of thirty days from the first reading of the ordinance. § 9–471(D).

## III. CONSTITUTIONALITY OF THE ANNEXATION STATUTE

Goodyear Farms contends that the petitioning process under the annexation statute is sufficiently analogous to voting such that the United States Supreme Court's cases involving property-ownership restrictions on voting should be applicable. *E.g., Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975); *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). The City contends that because the annexation statute "does not touch upon or burden the right to vote," these voting rights cases should not apply. *Township of Jefferson v. City of West Carrollton*, 517 F.Supp. 417 (S.D. Ohio 1981), *aff'd*, 718 F.2d 1099 (6th Cir. 1983); *Doenges v. City of Salt Lake City*, 614 P.2d 1237 (Utah 1980).[1]

Although the state has wide discretion in fashioning municipal boundaries, *see State v. Downey*, 102 Ariz. 360, 430 P.2d 122 (1967), in exercising this authority, however, the state is subject to constitutional limitations. *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). Goodyear Farms strongly urges that petitioning for annexation is the functional equivalent of voting. If this were true, then the state's classification between non-property owners and property owners would be scrutinized under the compelling interest test. *Hill v. Stone*, 421 U.S. at 297, 95 S.Ct. at 1643. Because we have concluded that the classification in the annexation statute does not even survive the less stringent rational basis test, we need not decide whether the petitioning process here is comparable to voting.[2]

1. In *Gorman v. City of Phoenix*, 76 Ariz. 35, 258 P.2d 424 (1953), the Arizona Supreme Court rejected the contention that the "annexation statute is a method of voting analogous to and covered by the same general principles as primary and general elections." *Id.* at 40, 258 P.2d at 427. *See also City of Tucson v. Garrett*, 77 Ariz. 73, 267 P.2d 717 (1954); *Skinner v. City of Phoenix*, 54 Ariz. 316, 95 P.2d 424 (1939). These rulings have no bearing upon our decision because no consideration was given to the equal

protection argument which is the core of the present dispute.

2. There are strong reasons to equate petitioning for annexation with voting. In Arizona, the right to petition is one of constitutional magnitude. Ariz. Const. art. II, § 5. As a matter of federal constitutional law, citizen actions involving zoning matters and land use decisions have been held to be protected activity under the first amendment's guarantee of the right to petition the government for redress of grievances. *E.g.,*

Under the rational basis standard of review, we must consider the character of the classification, the individual interests affected by the classification, and the government interest asserted in support of the classification. *State v. Kelly*, 111 Ariz. 181, 184, 526 P.2d 720, 723 (1974). We recognize that a "legislative classification will not normally be set aside if any set of facts rationally justifying it is demonstrated or perceived by the courts." *Id.*, 526 P.2d at 723.

The classification in the annexation statute touches upon and burdens an important right. The legislature has determined that annexation may only be accomplished through the initiation of a citizen petition. Thus, the sole opportunity for citizens in the annexed territory to express their approval (by signing the petition) or disapproval (by not signing the petition) of a proposed annexation is through the petition. The character of this classification, therefore, is one affecting a citizen's important interest in participation in a form of democratic expression engrafted by the legislature itself. "The signing of a petition for annexation is more than the exercise of a private right or of a property right. . . . [L]ike voting, [it] constitut[es] participation in a governmental process. . . ." *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis.2d 533, 539, 126 N.W.2d 201, 203–204 (1964).

It is no longer open to any doubt that nonproperty owners have as vital and substantial interest in municipal affairs as do property taxpayers. In *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), the Supreme Court invalidated a Louisiana law which gave only property taxpayers the right to vote in municipal elections to approve the issuance of utility revenue bonds. The Court found that the operation of the city's utility ser-

vices affected virtually every resident. 395 U.S. at 705, 89 S.Ct. at 1900. The impact of the revenue bond issue was found to be unconnected to one's status as a property taxpayer because any "benefits and burdens of the bond issue fall indiscriminately on property owner and non-property owner alike." *Id.*

In *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), the Court struck down an Arizona constitutional provision which limited voting to real property taxpayers in elections authorizing the issuance of general obligation bonds. The City of Phoenix claimed that only property taxpayers could vote because under Arizona law property taxes were to be levied to service the bonds. The Supreme Court concluded that the differences between the interests of property owners and nonproperty owners were not "sufficiently substantial to justify excluding the latter [nonproperty owners] from the franchise." 399 U.S. at 209, 90 S.Ct. at 1994. The Court recognized that nonproperty owners had a substantial interest in public facilities and services; that revenues other than property taxes were used to satisfy more than half of the debt service; and that the ultimate burden of taxation was passed on to lessees of rental property in the form of higher rents.

■ Unquestionably, nonproperty owners residing in an area to be annexed have a substantial interest in the outcome of the annexation proceeding. D. Hagman & S. Disco, *One-Man One-Vote as a Constitutional Imperative for Needed Reform of Incorporation and Boundary Change Laws*, 2 Urb.Law. 459, 464 (1970). Because the interests of residents in an area to be annexed are similar to the interests of those who reside in an area to be incorporated as a new city of town, a California Supreme Court decision is instructive.

*Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614–15 (8th Cir.1980); *Sawmill Prod. Inc. v. Town of Cicero*, 477 F.Supp. 636, 642 (N.D.Ill. 1979).

"It would seem appropriate to apply the principles of the franchise restriction cases to [property ownership] restrictions on eligible [peti-

tion] signers, for both forms of restriction give a particular economic group a veto on a proposition with which others are also substantially concerned. Viewed in this light, such signer limitations appear clearly unconstitutional." Comment at 1607.

We can discern no reason ... why landowners enjoy a greater interest, or non-landowners a lesser interest, in the formation of a city of general powers than in its governance, or its issuance of general obligation bonds....

... Nonlandowners share an equal interest with landowners in the formation of a city which could provide police and fire protection, maintain roads, acquire and develop parks, and furnish other public services. Moreover, cities derive revenue from many sources besides property taxes. Property taxes are levied on land and improvements, not land alone, and their burden includes tenants as well as landowners. Zoning laws and land use regulations affect not only the landowner but his neighbors; and their direct effect on the landowner cannot be measured in terms of assessed value.

*Curtis v. Board of Supervisors*, 7 Cal.3d 942, 960–61, 501 P.2d 537, 550, 104 Cal. Rptr. 297, 310 (1972). In *Curtis*, the California Supreme Court held unconstitutional a California statute which granted landowners the power to terminate an election for the incorporation of a new city. The interests of nonproperty owners in the formation of a new city are almost identical to the interests of nonproperty owners who reside in an area which may be annexed. Indeed, the logic of *Curtis* was extended to California's annexation statute in *Levinsohn v. City of San Rafael*, 40 Cal.App.3d 656, 115 Cal.Rptr. 309 (1974). The court noted that the unincorporated area "provides general public services and facilities and seeks to ameliorate these by annexation to a municipal body which presumably will improve the quality and extent of these services. *Such annexation concerns landowners and nonlandowners alike.*" *Id.* at 660–61, 115 Cal.Rptr. at 311 (emphasis added). We agree that annexation affects governmental services and regulations as well as tax levels and that all citizens have a vital interest in annexation,

regardless of whether they own property subject to taxation.

Although the City of Avondale offers no specific defense of the interests of real and personal property owners in the annexation process,[3] we readily acknowledge that their interests are important. But the relevant inquiry is whether or not there is a genuine difference between the interests of the classes which the legislature has created. *See Kramer v. Union Free School District*, 395 U.S. at 632, 89 S.Ct. at 1892. We see no significant or substantial difference between the class of nonproperty owners and the class of real and personal property owners to constitutionally justify the exclusion of the former from the petitioning process.

■ Because the classification between property owners and nonproperty owners (1) affects important legislatively-created rights; (2) excludes from participation those with substantial interests in the outcome of the annexation proceedings; and (3) does not further any articulable state interest, we hold that A.R.S. § 9–471(A)(1) (Supp.1984) is unconstitutional insofar as it excludes nonproperty owners from signing annexation petitions. This decision shall apply prospectively and to all annexation proceedings which have not become final, A.R.S. § 9–471(D) (Supp.1984), as of April 25, 1985. *See City of Phoenix v. Kolodziejski*, 399 U.S. at 213–14, 90 S.Ct. at 1996.

The judgment in favor of the City of Avondale is reversed. This matter is remanded to the trial court with instructions that judgment shall be entered in favor of Goodyear Farms in accordance with this opinion.

GRANT and HAIRE, JJ., concur.

---

**3.** The City contends that the state has a compelling interest in providing for the orderly growth of cities and the orderly extension of basic governmental services. We agree that there are important governmental interests. The City fails to explain, however, how the property-ownership restriction furthers these interests.