258 P.2d 424

GORMAN et al. v. CITY OF PHOENIX et al.

No. 5714.

Supreme Court of Arizona.

June 8, 1953.

V. L. Hash and Virginia Hash, of Phoenix, R. C. Moore, Phoenix, for appellants.

Laurence H. Whitlow, City Atty., and Jack D. H. Hays, George T. Fike and Arthur B. Parsons, Jr., Asst. City Attys., all of Phoenix, for appellees.

WINDES, Justice.

Suit by B. R. Gorman, et al., appellants, against the City of Phoenix, et al., appellees, to restrain appellees from annexing certain territory to the city of Phoenix, upon the alleged grounds that the petition which initiated the proceeding had been signed without authority and by persons other than the owners of a portion of the land affected and described therein; that some of the lands were tax exempt; and that the petitions were not signed by owners of a majority of the value of the property in the area proposed to be annexed. After one trip to this court, Gorman v. City of Phoenix, 70 Ariz. 59, 216 P.2d 400, the matter went to trial, resulting in judgment for appellees. Appellants, by appropriate assignments of error, present for our consideration the correctness of the trial court's construction of Section 16–701, A.C.A.1939, and whether it properly excluded and included certain properties in determining the sufficiency of the petitions to justify the appellees' action in annexing the territory involved.

Section 16–701, supra, provides as follows:

"Any city may extend and increase its corporate limits in the manner following: On presentation of a petition

in writing, signed by the owners of not less than one-half in value of the property in any territory contiguous to the city, as shown by the last assessment of said property, and not embraced within its limits, the common council of said city may, by ordinance, annex such territory to said city, upon filing and recording a copy of such ordinance, with an accurate map of the territory annexed, certified by the mayor of said city, in the office of the county recorder, in the county where the annexed territory is situated."

Appellants assert that, properly interpreted, the statute requires the signatures of the owners of not less than half the value of any and all property which is subject to taxation, whether real or personal, before the city would have the jurisdiction or authority to annex the territory. This statute has been on the books since 1893, and during the succeeding sixty years it has been interpreted by municipalities of the state and the legal profession as requiring the requisite signatures of only real property owners, and until now such interpretation has never been challenged. Of course, if the meaning given over a long period of years by the profession and those affected by the law is clearly wrong, it should not be adhered to, but otherwise these views are entitled to consideration and should not be lightly upset. 50 Am.Jur., Statutes, Section 320. We think, however, considering the purpose of the statute, the past interpretation placed thereon is correct. We have held that the legislature meant to limit those qualified to sign to owners of property subject to taxation in the territory proposed to be annexed. City of Phoenix v. State, 58 Ariz. 8, 117 P.2d 87. In other words, only those who are to bear the financial burdens of the city government are allowed to control the matter under this method of procedure. Likewise, it is most reasonable to assume the legislature had in mind the element of permanency. It would be unreasonable to attribute to the legislators an intention that any resident in the territory, even though perhaps temporarily residing therein, who might own some removable personal property could participate in saddling on real property owners a permanent municipal tax burden. In fact, it is conceivable that under such circumstances some, because of removing from the district with their movable property, would never carry any of the financial burden of the municipal government and would be allowed to influence the result. The legislators must have meant property with a permanent situs within the territory which would be subject to the tax burden. We hold that the term owners of "property in any territory contiguous to the city" means owners of property that is a part of the contiguous territory, which could be only real property. This construction is further fortified by the provision that such property shall not be "embraced within its limits". This carries the

idea that the property under consideration must be embraced within or included as a part of the territory to be annexed.

■ It is assigned as error that the court refused, in calculating the valuation of the properties represented in the petitions, to take into consideration certain properties owned by the Central Arizona Light and Power Company, the Mountain States Telephone and Telegraph Company, and the Southern Pacific Company. Concerning the property of the Light and Power Company, there was located within the territory gas mains, electric transmission lines, meters and all property necessary to enable the company to service the area. This property was assessed as personal property. The company owned title to no real property within the territory, and the assessment value reflected by the assessment covered all of school district No. 7. There was no unit assessment covering only the territory sought to be annexed. By mathematical calculation, the company's representatives allocated that part of the property located within the area as having a value of approximately $63,285 for the year in question. In other words, if the property located only within the boundaries of the territory to be annexed had been separately assessed, it would have been assessed at approximately the figure mentioned. If this figure was properly excluded by the court, it becomes unimportant whether the figure is accurate or whether the method arriving thereat was

correct. Appellants argue that even if it were assessed as personalty and even if this court held that the statute authorized only real property to be represented on the petitions, yet in fact this was realty and should have been considered as such. There is cited for this proposition our case of Fechet v. Drake, 2 Ariz. 239, 12 P. 694, wherein the court ruled that a realty mortgage on the plant covered the distribution system connected with the machinery located thereon. It was held that whether the poles, wires and appliances so connected were fixtures and appurtenant to the land was largely to be determined by the intention of the parties; that under the facts therein the distribution system was appurtenant to the land upon which the generating machinery was located and, being essential to its operation, was covered by the mortgage. It is difficult to understand how the principles announced in that case can be applicable here. If this property could be held to be attached to and a part of any real property, it would be the real property owned by the company. It certainly could not be considered appurtenant to the land of the residents of the district or the streets over which the company had a right-of-way. It must have a situs somewhere, and if it be realty the situs is necessarily the location of the land to which it is attached. Since the company owned no lands within the territory involved, this property as real property could not possibly be located within the territory to be annexed. It follows there-

fore, that, even assuming under some circumstances and for some purposes it might be considered as affixed to and a part of realty, it could not be considered as located within the area and as such could not be represented in the petition. It is unnecessary to decide whether, for some other purpose, it might be considered a fixture attached to land.

As to the property of the Telephone and Telegraph Company, a problem is presented similar to that concerning the power company. The property sought to be included is telephone poles, lines, cables, etc. In this matter there is no satisfactory proof as to what property was located in the territory in the year 1947. In any event, as with the power company, the court was justified in excluding the property.

It is claimed the court erroneously excluded property belonging to the Southern Pacific Company in the sum of $47,600. There is one mile of railroad in the area, and the railroad company is owner of the fee in the right-of-way. These properties are assessed by the tax commission, and the contention is that the assessment is on the basis of $47,600 per mile; therefore, this item should have been included. This assessment is made up of both personalty and realty. It includes rolling stock, franchises, stocks and bonds, and a proportionate share of the assessment on the station. There was no separate assessment of the real estate and there was no way they could allocate a valuation thereto and give it legal consideration.

We hold that the court properly eliminated the properties of Central Arizona Light and Power Company, Mountain States Telephone and Telegraph Company, and the Southern Pacific Company.

The court included the real property of the General Motors Corporation in the sum of $32,400. The petition was signed by the local manager of its plant which is operated in the area. Appellants say he had no authority to represent the company in this capacity and, having no power so to do, the property should be excluded. The gentleman who signed, the local manager, testified he had written authority, and he exhibited a letter which was admitted in evidence signed by one Barnes relating a conversation with a Mr. Crawford, vice president of the corporation and immediate superior of Barnes, whereby the local manager was in effect authorized to sign if it proved to be in harmony with the majority of the property owners in the area. Appellants exhibit the articles of incorporation of the company, with the claim that thereunder such action must be authorized by its board of directors. We have examined the articles and find no such provision. Appellants seem to be under the impression that consenting to become a part of a municipality is the equivalent of alienating or encumbering the property, but we have held to the contrary. City of

Phoenix v. State, 60 Ariz. 369, 137 P.2d 783, 146 A.L.R. 1255. If such purported authority were not genuine, it is quite probable that during the past six years since the signing of the petition there would have been some objection by the company. In view of the holding of the court as to other contested matters, whether this contention is valid has become somewhat academic and unimportant. With the elimination of this item of $32,400, a signed valuation of $341,430 would be left, which is more than half the total assessed value in the area of $672,500.

 The proposition of law is presented that the annexation statute is a method of voting analogous to and covered by the same general principles as primary and general elections. Under this proposition, the contention is made that to construe Section 16–701, supra, as limiting signers to real property owners would violate Article 7, Section 2 of the Arizona Constitution. So far as purtenant herein, this section specifies the qualifications of voters on any question submitted to a vote of the people and that the right to vote shall not be denied or abridged. To possess any mark of validity, the proposition offered must be based on the assumption that to be constitutional the legislature must permit anyone who pays municipal taxes of any character to be represented on the petition and to have a say on the question of annexation. Such an assumption is unsound for the reason that the legislature is not so limited in the exercise of its power over the procedure to be followed in enlarging the boundaries of municipalities. Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424. Colquhoun v. City of Tucson, 55 Ariz. 451, 103 P.2d 269. If the legislature desires to measure the right of municipalities to annex territory by the will of the owners of not less than one-half the assessed valuation of real property in the territory, we see no constitutional objection. We think Article 7, Section 2 of the Arizona Constitution was never intended to so limit the power of the legislature over municipalities.

The judgment is affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.