[Civ. No. 34720. First Dist., Div. One. July 17, 1974.]

JOHN L. LEVINSOHN et al., Petitioners, v.
CITY OF SAN RAFAEL et al., Respondents.

[redacted]

## COUNSEL

Long & Levit, Bert W. Levit and Allan R. Moltzen for Petitioners.

Robbins, Schenck & Casey and Fred C. Robbins, Jr., for Respondents.

## OPINION

**MOLINARI, P. J.**—Petitioners are registered voters and residents of an unincorporated area in Marin County known as Country Club Estates. They petition, as a class, to hold that sections 35121 and 35121.1 of the Government Code[1] are unconstitutional and to compel respondent City of San Rafael to resume proceedings for the annexation of said unincorporated area to the city.

---

[1]Unless otherwise indicated all statutory references are to the Government Code.

The facts are not in dispute. Petitioners and other residents and registered voters of the unincorporated area initiated and pursued required procedures seeking annexation. Written protests were filed by a number of landowners. A hearing was held before the city council and a resolution was adopted determining that a majority protest against annexation had been made by persons owning 50 percent or more of the assessed value of the land within the Country Club Estates. On the basis of this determination and in accordance with section 35121.1 annexation proceedings were deemed terminated.[2]

Section 35121, in pertinent part, provides: ". . . (a) If privately owned property and no publicly owned property is proposed to be annexed, further proceedings shall not be taken if protest is made by private owners of one-half of the value of the territory sought to be annexed. . . ."[3]

Petitioners assert that sections 35121 and 35121.1 are unconstitutional on the ground that they deny petitioners the right to vote upon the issue of annexation by virtue of the termination of the annexation proceedings in violation of article I, sections 11 and 21, of the Constitution of the State of California and the Fourteenth Amendment of the United States Constitution. Petitioners rely solely upon the decision of the California Supreme Court in *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942 [104 Cal.Rptr. 297, 501 P.2d 537].

Respondents recognize the decision in *Curtis* but assert that since it makes no mention of annexation proceedings they are bound to follow sections 35121 and 35121.1 in the absence of a specific declaration of unconstitutionality. They concede, however, that there is little, if any, distinction between the statute found unconstitutional in *Curtis* (§ 34311) concerning incorporation proceedings and the challenged statutes. In any event, they place reliance upon section 23, a severability provision, should the subject statutes be declared unconstitutional.

In *Curtis* the court was called upon to construe the constitutionality of section 34311 which, in pertinent part, provided with respect to the incorporation of a territory that "If upon the final hearing the board of supervisors finds and determines that written protests to the proposed in-

---

[2]Section 35121.1 provides for a hearing on protests, for the finding and declaration by resolution on whether or not a majority protest has been made, and provides for a limitation on further proceedings.

[3]Section 35121 also provides that if privately owned property and publicly owned property are proposed to be annexed in the same proceeding "further proceedings shall not be taken if protest is made to public and private owners of one-half of the value of the territory. . . ."

corporation have been filed with the board, signed by qualified signers representing 51 percent of the total assessed valuation of the land within the boundaries of the proposed incorporation, the jurisdiction of the board of supervisors shall cease; no election shall be called and no further petition for the incorporation of any of the same territory shall be initiated for one year after the date of such determination. . . ."

The court in *Curtis* declared that section 34311 was unconstitutional under the equal protection clause of the Fourteenth Amendment of the United States Constitution and the correlative provisions of the California Constitution, and issued its peremptory writ of mandate ordering the respondents to resume incorporation proceedings. The court determined that since section 34311 touched upon and burdened the right to vote it was subject to the strict test applicable to equal protection requirements for legislative classification. (7 Cal.3d at p. 955.) Accordingly, it concluded that no compelling interest was served by allocating power within the landowners' group on the basis of assessed value of land. (At p. 961.) The court also concluded that section 34311 allocated power among landowners in a manner which bore no rational relationship to any state interest because it distributed voting power on the basis of land alone notwithstanding taxes are levied on improvements as well as land. (At p. 963.)

█ Although the language in sections 35121 and 35121.1 varies from that in section 34311, the import is the same, i.e., a veto power exists in persons holding 50 percent or more of the assessed value of land. Section 34311 is concerned with the formation of new incorporated cities while the sections challenged here deal with the annexation of land to already existing incorporated cities. The distinctions in language and purpose are slight; the result is the same. We perceive that nonlandowners share an equal interest with landowners in the annexation of the area in which they reside to an existing city as they share an equal interest in the formation of a city. Incorporation and annexation are two different procedures to attain the same goal. The resulting benefits in such public services as police and fire protection, maintenance of streets and the development of parks, as well as the detriment resulting from the imposition of taxes, are identical. Accordingly, upon the authority and rationale of *Curtis* we must declare sections 35121 and 35121.1 to be constitutionally infirm as they deny petitioners equal protection of the law under both the California and the federal Constitutions.

The recent case of *Salyer Land Co.* v. *Tulare Water District* (1973) 410 U.S. 719 [35 L.Ed.2d 659, 93 S.Ct. 1224], decided after *Curtis*, is distinguishable. In *Salyer* the United States Supreme Court held sections

41000 and 41001 of the Water Code to be constitutional and not violative of the equal protection clause. According to those provisions only landowners are entitled to vote in general elections for the directors of the water district. It is therein provided that each voter may cast one vote for each $100 value of his land in the water district.

The rationale of *Salyer* is that where a special-purpose unit of government is assigned the performance of functions affecting definable groups of constituents more than other constituents such a body may be apportioned in ways which give greater influence to the citizens most affected by the organization's functions without offending the equal protection clause. (410 U.S. 719, 720-721 [35 L.Ed.2d 659, 662]; see *Avery* v. *Midland County* (1968) 390 U.S. 474, 483-484 [20 L.Ed.2d 45, 52-53, 88 S.Ct. 1114].) With respect to voting rights, *Salyer* observed that the case before it involved one where the duties of the elected functionaries were so far removed from normal governmental activities and so disproportionately affected different groups that a popular election was not required. (At pp. 727-728 [35 L.Ed.2d at pp. 665-666]; see *Hadley* v. *Junior College District* (1970) 397 U.S. 50, 56 [25 L.Ed.2d 45, 50-51, 90 S.Ct. 791]; *Reynolds* v. *Sims* (1964) 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362]; *accord: Associated Enterprises, Inc.* v. *Toltec District* (1973) 410 U.S. 743 [35 L.Ed.2d 675, 93 S.Ct. 1237] [per curiam decision].)

The majority in *Salyer* concluded that a water district fit within the exception to the "one person, one vote" rule, declared in *Reynolds* and followed in *Avery* and *Hadley* dealing with the governing bodies, respectively, of a county and a junior college district, on the basis that the water district was formed for a special limited purpose, i.e., the regulation of water flow, and that the landowners as a group would be most affected by the decisions of the water district. (410 U.S. at pp. 728-729 [35 L.Ed.2d at pp. 666-667].) It was specifically noted in *Salyer* that the water district ". . . provides no other general public services such as schools, housing, transportation, utilities, roads, or anything else of the type ordinarily financed by a municipal body. . . . There are no towns, shops, hospitals, or other facilities designed to improve the quality of life within the district boundaries, and it does not have a fire department, police, buses or trains." (410 U.S. at pp. 728-729 [35 L.Ed.2d at pp. 666-667].)

In the instant case the unincorporated area is not one existing for a special purpose but exists for the well-being of nonlandowners as well as that of landowners. It provides general public services and facilities and seeks to ameliorate these by annexation to a municipal body which presumably will improve the quality and extent of these services. Such

annexation concerns landowners and nonlandowners alike. As observed in *Curtis*, "[N]either the benefits of city government nor its burdens can fairly be said to be direcly proportional to the assessed value of land or to the special interests of landowners." (7 Cal.3d 942, 959.)

We note, in conclusion, that the invalidity of sections 35121 and 35121.1 has no effect on section 35120 which sets forth the procedure for protesting annexation and the holding of annexation elections. Section 35120 is clearly severable from the infirmities of the invalid statutes. (See *Curtis v. Board of Supervisors, supra*, 7 Cal.3d 942, 964.)

The peremptory writ of mandate as prayed shall issue.

Sims, J., and Elkington, J., concurred.