Donald E. CARLYN, et al.,
Plaintiffs-Appellants,

v.

CITY OF AKRON, et al.,
Defendants-Appellees.

No. 81–3358.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 5, 1982.

Decided Feb. 1, 1984.

Board of Trustees of Springfield Township, Helen Schrader, Akron, Ohio, Kent R. Minshall, Cleveland, Ohio (argued), for plaintiffs-appellants.

John W. Solomon, Brouse & McDowell Co., L.P.A., Akron, Ohio, for City of Akron.

John E. Holcomb, Brouse & McDowell Co., L.P.A., Akron, Ohio, for Goodyear.

Patricia Ambrose, Akron Law Dept., Robert D. Pritt (argued), Akron, Ohio, for Ray and Davis.

Orville L. Reed, Daniel G. LaPorte, Buckingham, Doolittle & Burroughs Co., L.P.A., Akron, Ohio, for defendants-appellees.

Before EDWARDS, Chief Judge,* JONES, Circuit Judge, and PECK, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

This case presents the question as to whether or not Ohio's annexation statutes, O.R.C. §§ 709.02–709.21 are or are not federally constitutional. The critical issue is that in the circumstances presented here, a portion of a township was detached from Springfield Township and annexed by the City of Akron without an affirmative vote of the township concerned. The annexation was initiated by the Goodyear Tire and Rubber Company whose property was contiguous to the City of Akron and its annexation petition was approved by the County Commissioners as required by Ohio law after hearings wherein the township trustees recorded their protests.

The case was heard by then District Judge Contie before whom the township trustees had filed their original complaint seeking, in the first instance, a temporary restraining order. Judge Contie indicated that he was going to consolidate hearing on the TRO and "the merits of the case" and proceeded to do so. His actions in this regard are now challenged by the appellants who claim they were thus deprived of a right to a jury trial and an opportunity properly to prepare for a final hearing.

We find no merit to these latter objections since Judge Contie clearly told the parties at the hearing on appellants' complaint that he intended to hear the merits and no objection was entered until after his disposition. See Federal Rules of Civil Procedure 65(a)(2).

The appellants, however, also claim that depriving the township voters of a right to vote on the annexation by Akron was a violation of their federal constitutional rights.

The United States Supreme Court has recognized very broad powers in the state concerned over annexation proceedings. The leading cases are *Hunter v. Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907) and *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978)—the very cases relied upon by the District Judge in denying petitioners' relief.

*Hunter* recognizes the state's broad discretion in matters of political boundaries as evidenced by the following quote:

> We think the following principles have been established by them and have become settled doctrines of this court, to be acted upon wherever they are applicable. Municipal corporations are political subdivisions of the State, created as convenient

---

* This case was argued and submitted to the panel November 5, 1982. At that time Judge Edwards was Chief Judge. He stepped down as Chief Judge on October 1, 1983.

agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it.

207 U.S. at 178–79, 28 S.Ct. at 177.

The sweeping language of *Hunter* and *Holt* has been modified in respect to manipulation of municipal boundaries for purposes of race discrimination in voting. *See Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). These cases have also been affected by two Supreme Court decisions which held that where the state agreed to have important municipal decisions made by voters, the equal protection clause must be applied to all within the jurisdiction whose rights are affected. *Kramer v. Union School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

It appears to this court that these last three cases have no decisive bearing on our present case. In this instance, Ohio has not committed any final authority to voters in the township concerned. Such final authority has plainly been vested in the Board of County Commissioners. As we will see below, two alternative methods of bringing an annexation issue before that body may be employed. The vote accorded by Ohio to township voters would simply have the function of putting the issue before that Board. No one of the three cases referred to above in reality has anything to do with the issues of this case.

The Ohio Revised Code provides for two methods of annexation of unincorporated territory into a contiguous municipality: 1) property owners within the territory may petition the county commissioners to annex their property; 2) the municipal corporation may apply for annexation of contiguous territory subject to an approving vote by the electorate in the township to be annexed. O.R.C. §§ 709.02–709.21. In either case the final decision concerning annexation rests with the county commissioners. They use the following statutory guidelines to make their determination:

After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:

\* \* \* \* \* \*

(D) The territory included in the annexation petition is not unreasonably large;

the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted.

O.R.C. § 709.033. *See Holcomb v. Summit County Comm'rs,* 62 Ohio St.2d 241, 242, 405 N.E.2d 262 (1980).

In the present case, under Method 2, the Village of Lakemore petitioned for annexation of Springfield Township to it. A township vote was scheduled for November 1979. Later on the same day when this earlier petition was filed, a landowner in Springfield Township, Goodyear Tire and Rubber Company, filed a request under Method 1 to annex its property which was contiguous to the City of Akron. The county commissioners held hearings on the Goodyear petition which included hearing protests from the township trustees who had not yet taken the required township vote. After a mandamus action, the county commissioners granted Goodyear's request.

The *Holcomb* case from Ohio's Supreme Court, dealing with this identical controversy, rests final authority in the commissioners for the annexation decision and not with the voters. The Ohio Supreme Court in *Holcomb* declared that under the Ohio annexation statutory scheme:

> An affirmative vote for the annexation is *merely advisory* with final approval resting within the discretion of the commissioners under the guidelines established in R.C. § 709.033 (emphasis added).

*Holcomb v. Bd. of Summit Co. Comm'rs,* 62 Ohio St.2d 241, 242, 405 N.E.2d 262 (1980).

Whether this is good social policy or not, it appears to us to be Ohio law. We also find no federal constitutional principle which may be invoked to invalidate R.C. § 709.033 on equal protection or due process grounds in the face of the strong affirmation of state power over its subdivision of government as set forth in the *Hunter* and *Holt* cases previously cited.

A state could, of course, place the power of decision in voters' hands (*see Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) and *Kramer v. Union School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 1969)). As noted above, however, Ohio has not chosen to do so. In *Berry v. Bourne,* 588 F.2d 422, 424 (4th Cir.1978)—a case close in point—the Fourth Circuit upheld a state law providing for annexation when 75% of the freeholders in the territory to be annexed signed a petition and the governing body of the annexing city adopted the appropriate resolution. According to the court, resident electors not authorized to sign the petition were not denied equal protection of the law because the state had not granted any right to vote on the final annexation decision. In the words of that court:

> The plaintiff urges that *Hunter* and the many cases which have followed it must be considered to have been overruled by the later decisions in *Cipriano v. City of Houma* (1969) 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; *Kramer v. Union School District* (1969) 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, and similar authorities. Those decisions, however, are inapplicable here. We emphasize again that neither freeholders nor electors as such are given the right to vote on annexation under the statute in question; that right is given exclusively to the governing board of the annexing city. It is true that three-fourths of the freeholders in the area to be annexed must request annexation before the governing body of the annexing city may consider annexation. This is a common preliminary prerequisite for authorization of an annexation, whether by an election or by action of the annexing city's governing board. But the important fact is that the action of the freeholders in signing the request for annexation does not authorize annexation. Annexation depends wholly on the favorable vote of the governing body of the annexing city. This is the crucial action and on that neither freeholders nor electors as such have a vote. Since the electors of the municipality of the area to be annexed are not given the right to vote under the challenged statute, the application of the statute poses no equal protection issue.

588 F.2d at 424.

The judgment of the District Court is affirmed.