714 P.2d 386

**GOODYEAR FARMS, an Arizona corporation; Litchfield Park Properties, an Arizona corporation; and Litchfield Park Service Company, an Arizona corporation, Petitioners-Appellants,**

v.

**The CITY OF AVONDALE, a municipal corporation, Respondent-Appellee.**

No. 18275–PR.

Supreme Court of Arizona, In Banc.

Jan. 13, 1986.

Snell & Wilmer by John Bouma and Eileen Moore, Phoenix, for petitioners-appellants.

Frank Ross, Litchfield Park, for respondent-appellee.

Johnson & Shelley by J. LaMar Shelley, Mesa, for brief of amicus curiae League of Arizona Cities and Towns.

Evans, Kitchel & Jenckes by John T. Moshier and Katherine M. Harmeyer, Martinez & Curtis by Jay M. Martinez and Susan D. Goodwin, Phoenix, for brief of amicus curiae Town of Gilbert, et al.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen. and Toni McClory, Asst. Atty. Gen., Phoenix, for brief of amicus curiae State of Ariz.

Lewis and Roca by John P. Frank and Michael O. Miller, Phoenix, for brief of amicus curiae AMCOR Investments Corp.

CAMERON, Justice.

This is a petition for review of an opinion and decision of the court of appeals, which reversed a summary judgment in favor of the City of Avondale and declared the Arizona annexation statute, A.R.S. § 9–471, unconstitutional. *Goodyear Farms v. City of Avondale*, 148 Ariz. 256, 714 P.2d 426 (1985). We have jurisdiction pursuant to art. 6 § 5(3) of the Arizona Constitution, A.R.S. § 12–120.24 and Rule 23, Ariz. R. of Civ.App.Proc., 17A A.R.S.[1]

The issue to be decided on review is whether A.R.S. § 9–471(A)(1) violates the equal protection clauses of the Federal and Arizona Constitutions by providing that only property owners can initiate annexation by the signing of annexation petitions.

The facts are not in dispute. In 1981, petitions were circulated among owners of property adjacent to the City of Avondale and owned in part by the petitioners. The petitions were signed by property owners representing more than one-half of the real and personal property subject to taxation in the area and then presented to the City of Avondale (Avondale) requesting annexation. Consequently, Avondale noticed and held a public hearing on the proposed annexation.

Goodyear Farms, Litchfield Park Properties, and Litchfield Park Service Company (Goodyear Farms), corporations owning property in the area to be annexed, were specifically invited to the public hearing. Following the hearing, on 26 May 1981, Avondale passed Annexation Ordinance No. 301 which annexed certain portions of the Litchfield Park community contiguous to its boundaries. Goodyear Farms filed suit challenging the validity of the annexation ordinance. They claimed that A.R.S. § 9–471, the statute providing the method

---

1. Amicus raises the issue of whether Goodyear Farms, a property owner, has standing to raise a constitutional challenge on behalf of non-property owners who have not affirmatively been shown to exist. We need not decide this issue for the reasons given in *State v. B Bar Enterprises Inc.*, 133 Ariz. 99, 101 n. 2, 649 P.2d 978, 980 n. 2 (1982) (standing is not a state court constitutional jurisdictional requirement, plus not raised by parties) and *Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Board*, 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982) (exception to Arizona rule of judicial restraint for cases of great public importance that are likely to recur). *See also Armory Park Neighborhood Association v. Episcopal Community Services in Arizona* [No. 17980–PR, filed 29 August 1985].

of municipal annexation, was unconstitutional. Upon cross-motions for summary judgment, the trial court ruled in favor of Avondale finding the ordinance valid and constitutional. The court of appeals reversed, holding that A.R.S. § 9–471(A)(1) violates the equal protection clauses of the Federal and Arizona Constitution, "insofar as it excludes non property owners from signing annexation petitions." *Goodyear Farms v. City of Avondale, supra,* at 260, 714 P.2d at 430. We granted Avondale's petition for review.

In Arizona, a city or town may annex property according to the procedure provided in A.R.S. § 9–471. Annexation can only be initiated:

> On presentation of a petition in writing signed by the owners of not less than one half in value of the real and personal property as would be subject to taxation by the city or town in the event of annexation, in any territory contiguous to the city or town, as shown by the last assessment of the property, and not embraced within the city or town limits, the governing body of the city or town may, by ordinance, annex the territory to such city or town....

A.R.S. § 9–471(A).

This statute provides a two-tier process of annexation. First, a petition requesting annexation must be signed by the owners of not less than one-half in value of the real and personal property subject to taxation, if the annexation is completed. Second, the governing body of the interested municipal corporation may then, at its discretion, enact an ordinance annexing the territory. Goodyear Farms argues that this method of annexation is unconstitutional, as a violation of equal protection, because it denies non-property owners residing in the area to be annexed the right to participate in the annexation decision.

■ The legislature has broad power over municipal annexations. *City of Tucson v. Garrett,* 77 Ariz. 73, 267 P.2d 717 (1954). This power was clearly recognized by the United States Supreme Court in *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), its landmark decision in this area, which stated:

> We think the following principles have been established by them and have become settled doctrines of this court, to be acted upon wherever they are applicable. Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. For the purposes of executing these powers properly and efficiently they usually are given the power to acquire, hold and manage personal and real property. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. * * * The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences.

*Id.* at 178–179, 28 S.Ct. at 46–47. Further, this court has stated, "[t]he extent of the right of municipalities to enlarge their boundaries is dependent entirely on the legislature and its power in that respect is

plenary in the absence of constitutional limitations, ...." *City of Tucson v. Garrett,* 77 Ariz. at 76, 267 P.2d at 719.

As to constitutional limitations where a classification does not involve a suspect class or a constitutionally protected interest, the equal protection clause is violated only if the classification is wholly unrelated to the objectives of the state's action. *State v. Reisig,* 128 Ariz. 60, 61, 623 P.2d 849, 850 (App.1981). Under this "rational basis" test, a legislative classification will not be set aside if any set of facts rationally justifying it is demonstrated to or perceived by the courts. *State v. Kelly,* 111 Ariz. 181, 184, 526 P.2d 720, 723 (1974), cert. denied, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975).

■ When, however, the classification drawn by the legislature is inherently suspect or where the legislation infringes on a fundamental right, *Riley v. Stoves,* 22 Ariz. App. 223, 228 n. 2, 526 P.2d 747, 752 n. 2 (1974), a classification will be upheld only if it is necessary to promote a compelling state interest. *Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981).

■ In the instant case, Goodyear Farms does not maintain that there is an inherently suspect classification involved. Goodyear Farms does maintain that the annexation petitioning process is analogous to the fundamental right to vote, *e.g. Curtis v. Board of Supervisors,* 7 Cal.3d 942, 104 Cal.Rptr. 297, 501 P.2d 537 (1972) (statutes that touch upon or burden the right to vote); *Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 533, 126 N.W.2d 201 (1964) (the right of an elector to participate in an annexation proceeding is analogous to voting upon the question) and that it, therefore, infringes on a fundamental right. We do not agree.

■ Admittedly, the expansive power given to the legislature over municipal corporations in *Hunter* is not unrestrained where voting is concerned. *See Town of Lockport v. Citizens for Community Action,* 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); *Hayward v. Clay,* 573 F.2d 187 (4th Cir.1978), cert. denied, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 351 (1978). In several voting rights cases, the United States Supreme Court has used the equal protection clause to strike down as unfair voter classifications where important municipal decisions were to be made by voters in an election. *See Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

■ A.R.S. § 9–471 does not, however, provide for an election on the issue of annexation. The United States Court of Appeals in *Berry v. Bourne,* 588 F.2d 422, 424 (4th Cir.1978), noted that since the electors in the area to be annexed are not given the right to vote under the challenged statute, its application poses no equal protection issue. The statute in that case was very similar to ours, in that it required a petition of three-fourths of the freeholders requesting annexation before the governing body of the annexing city could annex the area. *Id.* at 423. Without an election, the voting rights cases are not directly applicable. *See Weber v. City Council of Thousand Oaks,* 9 Cal.3d 950, 109 Cal.Rptr. 553, 513 P.2d 601 (1973). Also, there is "no federal constitutional right to vote on annexation matters." *Township of Jefferson v. City of West Carrollton,* 517 F.Supp. 417, 420 (S.D.Ohio 1981), aff'd 718 F.2d 1099 (6th Cir.1983); *See also Hayward v. Clay,* 573 F.2d at 190 (4th Cir.1978).

Goodyear Farms argues, however, that an actual election is not required to trigger strict scrutiny. They contend that it is enough if the annexation procedure is analogous to voting, *Town of Fond du Lac, supra,* or touches upon or burdens the right to vote. *Curtis v. Board of Supervisors, supra.* We believe that both of these cases are distinguishable.

The finding in *Town of Fond du Lac* that the signing of an annexation petition is analogous to voting arose where the annexation petition required the signatures of resident electors. Therefore, it was held that the signature of an elector on an annexation petition was the exercise of a political right to participate in a governmental process like voting. *Town of Fond du Lac*, 126 N.W.2d at 204. In a later case, the Wisconsin Court of Appeals enunciated the distinction between a property owner as opposed to an elector signing an annexation petition. *Town of Medary v. City of La Crosse*, 88 Wis.2d 101, 277 N.W.2d 310 (App.1979).

> Ownership itself, detached from the personal benefits or detriments that accompany residency in a municipality, is more of a private right than the political right a resident may have in annexation. * * * The two types of interests are treated differently because they are different. Thus the political nature of annexation petitions recognized as applicable to electors in *De Bauche* [*v. Green Bay*, 227 Wis. 148, 153–154, 277 N.W. 147 (1938)] and *Fond du Lac* is not applicable to property owners.

*Id.* at 105, 277 N.W.2d at 314. We do not believe that the Arizona annexation petition process, which is signed by property owners, would be a political right analogous to voting.

In *Curtis v. Board of Supervisors, supra*, the California Supreme Court invalidated a statute which allowed landowners to bar an incorporation election. Under the California statute, after incorporation proceedings have begun but before the statutorily required incorporation election, a petition could be submitted, signed by fifty-one percent of the owners of the total assessed value of land in the area, which would deprive the county board of supervisors of jurisdiction to call for an incorporation election and no further incorporation could be initiated for one year. *Id.*, 7 Cal.3d at 948, 104 Cal.Rptr at 301, 501 P.2d at 541. The court found that barring an election touched upon and burdened the right to vote and applied the compelling

state interest test. *Id.* at 953, 104 Cal.Rptr. at 306, 501 P.2d at 546. Based on *Curtis*, a similar landowner veto of an annexation election was invalidated in *Levinsohn v. City of San Rafael*, 40 Cal.App.3d 656, 115 Cal.Rptr. 309 (1974).

The Arizona annexation statute provides for neither an annexation election nor a veto by property owners over such an election. A.R.S. § 9–471. Such a procedure, therefore, should not be invalid under *Curtis*. We note that the California Supreme Court upheld a much more invidious classification in *Weber v. City Council of Thousand Oaks*, 9 Cal.3d 950, 109 Cal.Rptr. 553, 513 P.2d 601 (1973), against an equal protection claim similar to the one made here and in *Curtis*. In *Weber*, the California statute involved allowed annexation of land having less than twelve registered voters without calling for an annexation election. *Id.* at 953–954, 109 Cal.Rptr. at 554, 513 P.2d at 602. Annexation of land with more than twelve registered voters required an annexation election. *Id.* It was contended that this classification touched upon or burdened their right to vote, essentially disenfranchising them. *Id.* at 959–960, 109 Cal. Rptr. at 558–559, 513 P.2d at 606–607. The California court upheld the statute and distinguished both the "voting rights" cases and *Curtis*, stating:

> All of the foregoing cases are distinguishable on the ground that in each instance the classification was designed to exclude from an election an "identifiable class" of electors.
>
> * * * * * *
>
> Each of these decisions, including *Curtis*, involves *an unconstitutional impairment of voting rights in elections actually provided for by state law*, as distinct from the claim now advanced by plaintiffs that it is unconstitutional for the Legislature not to have provided for an annexation election in the ... instant case although providing for it in other circumstances.

*Id.* at 960–961, 109 Cal.Rptr. at 559, 513 P.2d at 607 (citation omitted) (footnote

omitted) (emphasis added). We believe *Curtis* is inapplicable to the case at bar.

Arizona does not have any caselaw precisely on point. However, we have held, in an annexation case challenging the property owner petition process as a violation of art. 7, § 2 of the Arizona Constitution dealing with voter qualifications, that:

> The proposition of law is presented that the annexation statute is a method of voting analogous to and covered by the same general principles as primary and general elections.
>
>   *    *    *    *    *    *
>
> [T]he proposition offered must be based on the assumption that to be constitutional the legislature must permit anyone who pays municipal taxes of any character to be represented on the petition and to have a say on the question of annexation. Such an assumption is unsound for the reason that the legislature is not so limited in the exercise of its power over the procedure to be followed in enlarging the boundaries of municipalities. If the legislature desires to measure the right of municipalities to annex territory [by landowner petition], we see no constitutional objection.

*Gorman v. City of Phoenix*, 76 Ariz. 35, 40, 258 P.2d 424, 427 (1953) (citation omitted).

The Arizona annexation statute provides for the actual annexation to be by the governing body of the annexing city or town. A.R.S. § 9–471(A)(1). The petitioners are mere supplicants and have no power or right to require annexation. *City of Tucson v. Garrett*, 77 Ariz. at 76, 267 P.2d at 719. The decision to annex is entirely discretionary with the city or town's governing body. *Kempton v. City of Safford*, 140 Ariz. 539, 541, 683 P.2d 338, 340 (App. 1984). It has been said that the voting rights cases " 'create no constitutional rights in effected citizens concerning the *procedure* for creating or altering' any type of state district." *Township of Jefferson v. City of West Carrollton*, 517 F.Supp. at 420, (emphasis added) (quoting *Detroit Edison Co. v. East China Town-*

*ship School District No. 3*, 378 F.2d 225, 229 (6th Cir.1967). The Arizona Court of Appeals, in an equal protection challenge to the creation of a special improvement district, distinguished the analogy to a voting rights case stating the "obvious difference is that *Kolodziejski* dealt with election procedures, whereas this case involves petitioning procedures to an executive body performing a delegated legislative duty." *Gillard v. Estrella Dells I Improvement District*, 25 Ariz.App. 141, 146, 541 P.2d 932, 937 (1975).

Finally, this court finds persuasive the several cases from other jurisdictions that have upheld annexation procedures similar to ours against equal protection claims and in doing so have refused to apply the compelling state interest test. *See Carlyn v. City of Akron*, 726 F.2d 287 (6th Cir.1984) (no equal protection violation where no final authority on annexation is given to voters but instead to Board of County Commissioners); *Berry v. Bourne*, 588 F.2d 422 (4th Cir.1978) (where challenged procedure does not involve nor contemplate an election there is no unconstitutional limitation upon the right to vote); *Township of Jefferson v. City of Carrollton, supra,* (unlike voting rights case where vote is final act triggering annexation, signing of petition is only necessary condition precedent); *Adams v. City of Colorado Springs*, 308 F.Supp. 1397 (D.Colo.1970), *aff'd per mem.* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970) (cannot graft voting rights cases onto annexation law); *Doenges v. City of Salt Lake City*, 614 P.2d 1237 (Utah, 1980) (petition valid where final decision left up to the City Commission); *Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978) (petitioning for annexation is not a fundamental voting right). *Cf. City of Seattle v. State*, 103 Wash.2d 663, 669, 694 P.2d 641, 646 (1985) (numerous cases approving statutory schemes granting property owners greater influence on the decision to annex, such as the right to initiate the annexation procedure are distinguishable from statutory schemes where the fi-

nal decision on annexation is made in an election).

We conclude that the petitioning process utilized in A.R.S. § 9–471 is not analogous to voting, and therefore does not infringe on a fundamental right. Therefore, the proper test to apply in the case before us is the rational basis test. In reaching this decision, we agree with the *Berry* court that " 'the Supreme Court's decision in *Hunter v. City of Pittsburgh* * * * continues to be the law, and we are not at liberty to limit the effect of this decision by grafting the voting rights decisions on to this annexation body of law.' " *Berry v. Bourne*, 588 F.2d at 424 (quoting *Adams v. City of Colorado Springs*, 308 F.Supp. 1397, 1404, *aff'd per mem*, 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970)).

In applying the rational basis test, the equal protection clause will not be violated if any set of facts can be reasonably perceived to sustain the classification. In other words, if there is a rational basis for the classification, there is no constitutional violation. *State v. Levy's*, 119 Ariz. 191, 192, 580 P.2d 329, 330 (1978).

We agree that there are rational bases for the property owner, non-property owner classification; namely, the effects of annexation such as susceptibility to property taxes and bond liens apply only to landowners; property owners face more of an increased financial burden; and municipalities will be severely handicapped if annexation required the approval of all voters in the area and it would hinder the orderly growth of Arizona cities and towns. The legislature intended that the permanency associated with a property owner be present in a signer of an annexation petition.

The court of appeals, in deciding this case below, recognized that there are important governmental interests present in annexation. *Goodyear Farms v. City of Avondale*, 148 Ariz. at 260, n. 3, 714 P.2d at 430, n. 3. This court in *Gorman v.*

*City of Phoenix* found a rational basis for the property owner classification stating:

In other words, only those who are to bear the financial burdens of the city government are allowed to control the matter under this method of procedure. Likewise, it is most reasonable to assume the legislature had in mind the element of permanency. It would be unreasonable to attribute to the legislators an intention that any resident in the territory, even though perhaps temporarily residing therein, who might own some removable personal property could participate in saddling on real property owners a permanent municipal tax burden.

76 Ariz. at 37, 258 P.2d at 425. The New Mexico Supreme Court upheld a procedure by which annexation was initiated upon a petition of the owners of a majority of acres in the territory to be annexed by simply stating, "[o]ne obvious and rational basis ... is that taxes to support the Village will be partially apportioned in accordance with the amount of land owned ..." *Torres v. Village of Capitan*, 92 N.M. at 70, 582 P.2d at 1283. Also in *Adams v. City of Colorado Springs, supra*, it was recognized that a municipality is severely handicapped by annexation procedures requiring approval of all property owners and electors in the area. 308 F.Supp. at 1404. It would be unable to deal with the people living just outside the city, enjoying its advantages without having to pay for them. Such persons would seldom consent to annexation and their nonconsent could threaten the core city. *Id.*

We point out that by finding a rational basis for this classification and upholding the annexation procedure provided in A.R.S. § 9–471, we are not depriving non-property owners from any voice in the annexation process. First, non-property owners may express their opinions, pro or con, to the governing body of the annexing city or town. It is who has the real power of approval or rejection over the annexation. *Kempton v. City of Safford, supra.* Second, the legislature has provided that any interested party may contest the validity of an annexation for failure to comply

properly with the procedure set forth in A.R.S. § 9–471(A)(1) or (A)(2). *Gieszl v. Town of Gilbert,* 22 Ariz.App. 543, 529 P.2d 255 (1974); A.R.S. § 9–471(C). By this provision, a non-property owner can protect himself against an illegal annexation. Therefore, even though we recognize that non-property owners have an interest, in whether or not the area in which they reside is annexed, we find that the classification drawn by the legislature in A.R.S. § 9–471 is rational and furthers a legitimate state interest in the orderly and prosperous growth of Arizona cities and towns. The Arizona annexation statute, A.R.S. § 9–471, is constitutional.

The opinion and decision of the court of appeals is vacated and the ruling of the trial court is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, dissenting.

I do not agree with either of the majority's conclusions. First, I believe that the legislative classification which gives property owners the exclusive voice in the initiation of annexation is one which infringes upon the fundamental rights of residents who are not property owners. The effect of annexation on residents as well as property owners is substantial. *See* Note, *The Right to Vote in Municipal Annexations,* 88 HARVARD L.REV. 1571, 1594. It is true that the state does not have to deal with popular opinion at all in the annexation process. *City of Tucson v. Garrett,* 77 Ariz. 73, 267 P.2d 717 (1954). Nevertheless, when the state chooses to do so and makes petition to a city council the only method to initiate annexation of an unincorporated area, the state deals with the political rights of those who live within the unincorporated area and must deal with all the people equally. *See Adams v. City of Colorado Springs,* 308 F.Supp. 1397 (1970), *aff'd.* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970).

The majority quotes extensively from *Hunter v. City of Pittsburgh,* 207 U.S. 161, 178–79, 28 S.Ct. 40, 46, 52 L.Ed. 151 (1907).

I believe that in the context of this present case *Hunter* does not stand for the proposition of absolute power for which it is cited. First, in *Hunter,* the dispute was over dilution of the voting rights of the smaller city's voters because a majority of the combined votes of both cities was necessary to annex. The issue was not whether some residents were excluded from the process. Second, the case arose under the contract clause, U.S. Const. art. 1, § 10 cl. 1, with petitioner arguing that there was an impairment of the contract between the citizens and the city. The Supreme Court never addressed the questions of violations of due process or equal protection. Third, *Hunter* only applies to *municipal* property used for governmental purposes, *Id.* at 179, 28 S.Ct. at 47. It does not apply to municipal property used for private purposes, as to which "the legislature is not omnipotent."

Not only have concepts of due process and equal protection evolved in the past 80 years, but in *Hunter,* all voters in both cities were allowed to vote on the proposition. The premise of *Hunter* is that cities are creatures of the state, which I do not dispute. However, the issue in the present case is whether the legislature can deprive the class of resident non-landowners of a voice in the initial decision to become part of a city while granting it to non-resident landowners. *Hunter* is inapposite to this issue.

The ability to participate in the determination of the nature of the governmental entity that is to exercise power over one's person and one's family is a right of a fundamental nature. It is a right that is shared by residents *and* property owners in the area. *Curtis v. Board of Supervisors of Los Angeles County,* 7 Cal.3d 942, 960, 104 Cal.Rptr. 297, 309, 501 P.2d 537, 549 (1972). In my view, therefore, although the right denied non-property owners in the present case is not an electoral right, it is one of fundamental importance in its impact upon residents and property owners alike.

The majority reasons that *Curtis, supra,* is inapplicable because the California court found "that barring an election touched upon and burdened the right to vote and [therefore] applied the compelling state interest test." (At 390). A.R.S. § 9–471 has the same effect because, although it does not touch upon the right to vote, it does bar access to the annexation process. The California statute in *Curtis* allowed landowners to control the culmination of the annexation process—an election—while the Arizona statute allows landowners to control the initiation of an annexation which culminates in a vote by the city council. Both statutes interfere with the citizen's right of participation in the political process. The Arizona statute, like that held unconstitutional by the California court, touches upon fundamental political interests. It can be found valid only by applying strict scrutiny—the compelling state interest test. The majority errs in adopting and applying the rational basis test.

The majority also errs in holding that the statute passes even the rational basis test. The annexation statute makes two unconstitutional classifications. First it distinguishes between those who own taxable property and those who do not, excluding those who do not. The majority has identified no state interest to justify this exclusion. While the initial burdens of increased property taxation are placed on landowners, they are immediately passed on to consumers through increased rents and via increased prices. Further, landowners share equally with non-landowners the need for and benefits from all public services. *Curtis,* 7 Cal.3d at 961, 104 Cal.Rptr. at 310, 501 P.2d at 550.

The second major defective classification is that § 9–471 distinguishes by wealth even among the eligible landowners themselves by providing that owners of at least "one-half *in value*" of the property sign the petition. The greater the assessed value of a parcel land, the greater the weight of that owner's signature. This classification cannot withstand any scrutiny. One landowner with substantial holdings could effectively block all action by a much greater number of people. This is fundamentally at odds with all notions of fairness and participation in the political process. It is patently exclusionary. *See Bullock v. Carter,* 405 U.S. 134, 142–44, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972); Note, *supra* at note 129. This statute discriminates against all residents and small property owners who have the same interests in government services as wealthier owners. The state has no interest which can justify this exclusion.

Thus, even if we were to forego the strict scrutiny test and apply a rational basis analysis, this statute cannot survive. The majority argues (at 392–93) that there is a rational basis for the property—non-property classification because property owners pay taxes, must bear the financial burdens of annexation, and, therefore, have a real interest in whether their property is annexed or not. I concur in these sentiments, but find in them only a rational basis for *inclusion* of property owners in the process of determining whether a property should be annexed.

The question before us, however, is whether there is a rational basis for *exclusion* of residents in the areas who happen not to own property. While the majority argues (at 392–93) that non-property owners have some voice in the annexation process because they can argue to the city council or mount a court contest to the validity or legality of the annexation, I find the reasoning unpersuasive. It fails to explain why a non-resident owner who has never set foot in Arizona, and who may never intend to do so, may have the sole voice in determining whether the property is to be annexed; it fails to explain why those who reside on the property and whose vital interests will be affected by the question of annexation have no voice whatsoever and no method by which to even attempt to determine who will provide them with necessary governmental services.

The majority gives good reasons for giving property owners a voice in annexation.

It gives no reasons, good or bad, rational or irrational, for excluding non-property owning residents from the annexation process. The majority has the issue backwards. In an equal protection analysis, the statute should not be sustained merely because there is a basis for the favorable treatment given to one class. There should also be some basis, either rational or compelling, for the discrimination against the other class. *See Harper v. Virginia State Board of Elections*, 383 U.S. 663, 666–67, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966); *Kramer v. Union Free School District*, 395 U.S. 621, 627–28, 89 S.Ct. 1886, 1890, 23 L.Ed.2d 583 (1969). No such basis is provided here. I submit that none exists. I agree with the opinion of the court of appeals and would hold the statute unconstitutional.